**Samuel SALDANA, Jr., Appellant,**

**v.**

**The STATE of Texas, Appellee.**

**No. 08–01–00178–CR.**

Court of Appeals of Texas,
El Paso.

July 31, 2002.

Lawrence L. Barber, Jr., Odessa, appointed attorney.

Tracey Bright, County Atty., Odessa, for state.

Before Panel No. 2 BARAJAS, C.J., McCLURE, and CHEW, JJ.

### *OPINION*

RICHARD BARAJAS, Chief Justice.

This is an appeal from a conviction for the offense of simulating legal process. The jury assessed punishment at nine (9) months' confinement and a fine of $2,500. We reverse the judgment of the trial court.

## I.  *SUMMARY OF THE EVIDENCE*

Appellant was charged by complaint and information for three offenses of simulating legal process. All three cases were tried at the same time. Appellant represented himself *pro-se*. At trial, the State utilized the testimony of Sergeant Mike Tacker of the Odessa Police Department. He worked as a detective for the Office of Special Investigations. Sergeant Tacker was assigned a case involving an incident where Appellant was stopped by a patrol officer and was issued a traffic citation. Subsequently, various packets of papers were sent to that patrolman by certified mail at the police station at 205 North Grant, Odessa, Texas.

The first packet was delivered on August 14, 2000, while the second packet was delivered on August 30, 2000. The third packet was delivered on September 5, 2000. After consultation with a police legal advisor, Sergeant Tacker obtained a search warrant for Appellant's business and residence. As a result of the search, Sergeant Tacker found three identical packets of papers in Appellant's residence. He also found the three green certified mail receipts from the packets that were sent to the police station. It was Sergeant Tacker's opinion that the documents in the packets were legal or court documents.

Joe Ramirez, a patrolman with the Odessa Police Department, testified that on August 1, 2000, he was on patrol and he stopped Appellant for running a stop sign. Officer Ramirez wrote out a traffic citation and gave it to Appellant. He related that he received the three packets from Appellant at the Odessa Police Department. Officer Ramirez stated that he thought he had to make some response to the documents because he thought he was being sued. The officer identified a certified copy of the citation he issued to Appellant. The citation number was 994775. Officer Ramirez related that when he gave the citation to Appellant, he stamped it with a seal and instead of signing the ticket, he wrote, "accept for value." Officer Ramirez characterized the citation as a notice for the recipient to appear or to contact the municipal court within ten days.

When Officer Ramirez received the first packet, he sent it to the police legal advisor. He was instructed to send any other communication to that individual. Some of the documents purported to be tax documents requesting that Officer Ramirez report to the Internal Revenue Service large sums of money that had been given to him by Appellant. In fact, the Internal Revenue Service sent an inquiry to Officer Ramirez regarding a supposed contribution of $10,000 that Appellant had given him.

The three packets were admitted into evidence as State's Exhibits numbers one, two and three. State's Exhibit contained a document headed by the phrase "NON–NEGOTIABLE." It gave Appellant's address and was entitled "FIRST REQUEST FOR FIDUCIARY TAX REPORT." Below the title was the phrase, "In the matter of: *Notice of Acceptance for Value and Exempt from Levy.*" The document then read:

> To: Joe Ramirez
>
> Regarding your Public Offering of August 1, 2000 "NOTICE TO APPEAR", into My commercial affairs which I accepted for value, please adjust and close

this account and provide Me with a copy of the Fiduciary Tax Estimate or Fiduciary Tax Report and the IRS 1099–OID covering this matter, since the account is accepted for value by Me and is Exempt From Levy, the same is pre-paid. Copies of the Fiduciary Tax Estimate or Fiduciary Tax Report will help Me to discover who is delinquent and making other claims since this account is pre-paid and has exempt priority.

Income is corporate income, and the Fiduciary of that corporate entity is in possession of taxable income (a criminal charge) by virtue of the corporation promise to pay (a promissory note) held by the attorney in that business organization having the fiduciary obligation to make the Fiduciary Tax Return to the principal for the adjustment of the account. That attorney is eligible for a crime charge against his person if the requested adjustment has not been returned to the principal. The account is exempt only after adjustment.

Since the value of this matter belongs to me, after the Order for adjustment, I will make the currency report to the Internal Revenue Service using my employer ID # 461192895 as the source from which the revenue is obtained, and your name or the name of the individual that you send as the party who received the revenue by Withdrawing from my account.

Please provide the information and release the Order/Property to me immediately in accord width Truth–in–Lending for settlement of this retail commercial agreement and provide me with your Taxpayer ID # (W–9 request enclosed— Blank) if you do not agree with the terms and conditions mentioned above. Until then, I am . . . .

The document is then signed by Appellant with various other identification numbers and enclosures with copies to the Internal Revenue Service, Secretary of the Treasury, FTB, FinCen, SEC and file.

The next document in the exhibit is a page with a copy of traffic citation number 994775. Written over the citation is the statement, "Accepted for Value." This Property is Exempt from Levy. Please adjust this account; and release the proceeds; account; and fixtures and release the order or orders of the court to Me immediately. Date: 8/11/2000 Employer ID # 461192895.

Next is a form entitled "TEXAS ORDINARY CERTIFICATE OF ACKNOWLEDGMENT CIVIL PRACTICE & REMEDIES CODE SECTION 121.007." The form indicates that Letricia C. Brewer acknowledged that Appellant appeared before her proved through United Nations Permit. The form is notarized and describes the attached document as # 994775 Municipal Court City of Odessa Texas.

The next document in the exhibit is addressed to Joe Ramirez, DBA: Officer of the ODESSA POLICE DEPARTMENT and gives the address of the police department. The rest of the document is a lengthy request containing accounting language for Officer Ramirez to close an account and stating that his failure to do so will, "result in a Federal Agency investigation of your use of securities, etc." The document is signed by Appellant.

Also contained in the exhibit is a handwritten "Affidavit of Denial of Corporation Existance (sic)." In this document, Appellant denies the corporate existence of, "UNITED STATES, THE STATE OF TEXAS, THE COUNTY OF ECTOR ODESSA, TEXAS, CITY OF ODESSA POLICE DEPARTMENT, JOE RAMIREZ, RICKY SUBIA ALL BAR ASSOCIATIONS, MUNICIPAL COURT CITY OF ODESSA TEXAS." Appellant

then requires anyone who wishes to answer his affidavit to reply within five days.

Also included in the document is a Internal Revenue Service form W–9. It is entitled "Request for Taxpayer Identification Number and Certification." It is filled out in the name of Joe Ramirez DBA Police Officer of Odessa Police Department and gives the police department address.

The final document is entitled "Proof of Service." In this document, it states:

> I am a Citizen of the Texas Republic, over the age of 18 and not a party to the within action. My postal location is: c/o 1016 Yucca, Odessa, Texas State, non-domestic U.S. post.

The document then lists the enclosures in the packet and lists Officer Ramirez as an interested party to the action. It then states, "I declare under penalty of perjury under the laws of the united states of America that the foregoing is true and correct." The signature of Pedro Gonzalez appears above the phrase "Server's Appellation."

State's Exhibit number two contains a document similar to the first communication in the first packet. It is titled, "SECOND REQUEST FOR FIDUCIARY TAX REPORT." This document contains the following paragraph:

> NOTICE is hereby given to Joe Ramirez, who is making a public offering in the "NOTICE TO APPEAR", dated August 1, 2000. Due to your failure/refusal to provide me a copy of the Fiduciary Tax Estimate, Fiduciary Tax Report, and 1099–OID requested by me on August 11, 2000 for adjustment of your action(s) in CASE NUMBER 994775, being your personal conduct in the events you are accountable for and accepted by me (the holder) prior to this failure/refusal; I hereby make my "Second Request"; the same is a charge-

back to my account charging you with the Dishonor for Value.

Also contained in this exhibit is another copy of the citation. Written over the citation is a handwritten note mentioning Lawrence Summers, Secretary of the Treasury. The note mentions various sections of the Uniform Commercial Code and mentions a postal order in the amount of $95,000 to be charged to the debtor's order. The exhibit also contains a similar certificate of acknowledgment as found in the prior exhibit as well as the same accounting instructions. There is a "NON–NEGOTIABLE BILL OF EXCHANGE" which purports to be some sort of financial document and it mentions the sum of $95,000. Part of the document states:

> 1. Enclosed please find a copy of the Undersigned's non-negotiable Acceptance For Value of Joe Ramirez's offer, ie. "NOTICE TO APPEAR". The undersigned accepts for value all related endorsements, front and back, to include all endorsements in accord with UCC3–419. Said "NOTICE TO APPEAR", and the Undersigned's non-negotiable acceptance for value of Joe Ramirez's non-consideration/refusal/dishonor therof, are included in and made part of the Undersigned's Commercial Agreement. The total amount of NON–NEGOTIABLE CHARGEBACK is ninety five thousand United States Dollars ($95,-000.00).

Also contained in the exhibit is another Internal Revenue Service form W–9 and a similar proof of service found in the first packet.

State's Exhibit number three has a "THIRD REQUEST FOR FIDUCIARY TAX REPORT." There is another copy of the citation with similar writing as found in the second packet except that the figure mentioned is $920,000. There is another acknowledgment form and a list of ac-

counting instructions. The *"NON-NEGO-TIABLE BILL OF EXCHANGE"* in this exhibit mentions a figure of $920,000 and contains the same "NOTICE TO APPEAR" language. There is another W–9 form. This exhibit contains an Internal Revenue Form 8300 titled "Report of Cash Payments Over $10,000 Received in a Trade or Business." The form purports to report some case transaction to the Internal Revenue Service involving Officer Ramirez and Appellant. The last document is a proof of service similar to those in the other two exhibits.

## II. DISCUSSION

In Issue No. One, Appellant asserts that the evidence is legally insufficient to support the conviction. In reviewing the legal sufficiency of the evidence, we are constrained to view the evidence in the light most favorable to the judgment to determine whether any rational trier of fact could find the essential elements of the offense, as alleged in the application paragraph of the charge to the jury, beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *Butler v. State*, 769 S.W.2d 234, 239 (Tex.Crim.App.1989); *Humason v. State*, 728 S.W.2d 363, 366 (Tex. Crim.App.1987). More particularly, sufficiency of the evidence should be measured by the elements of the offense as defined by the hypothetically correct jury charge for the case. *Malik v. State*, 953 S.W.2d 234, 239–40 (Tex.Crim.App.1997).

Our role is not to ascertain whether the evidence establishes guilt beyond a reasonable doubt. *Stoker v. State*, 788 S.W.2d 1, 6 (Tex.Crim.App.1989), *cert. denied*, 498 U.S. 951, 111 S.Ct. 371, 112 L.Ed.2d 333 (1990); *Dwyer v. State*, 836 S.W.2d 700, 702 (Tex.App.-El Paso 1992, pet. ref'd). We do not resolve any conflict in fact, weigh any evidence or evaluate the credibility of any witnesses, and thus, the

fact-finding results of a criminal jury trial are given great deference. *Menchaca v. State*, 901 S.W.2d 640, 650–52 (Tex.App.-El Paso 1995, pet. ref'd); *Adelman v. State*, 828 S.W.2d 418, 421 (Tex.Crim.App.1992); *Matson v. State*, 819 S.W.2d 839, 843 (Tex. Crim.App.1991); *Leyva v. State*, 840 S.W.2d 757, 759 (Tex.App.-El Paso 1992, pet. ref'd); *Bennett v. State*, 831 S.W.2d 20, 22 (Tex.App.-El Paso 1992, no pet.). Instead, our only duty is to determine if both the explicit and implicit findings of the trier of fact are rational by viewing all the evidence admitted at trial in the light most favorable to the verdict. *Adelman*, 828 S.W.2d at 421–22. In so doing, we resolve any inconsistencies in the evidence in favor of the verdict. *Matson*, 819 S.W.2d at 843, (quoting *Moreno v. State*, 755 S.W.2d 866, 867 (Tex.Crim.App.1988)). The trier of fact, not the appellate court, is free to accept or reject all or any portion of any witness's testimony. *Belton v. State*, 900 S.W.2d 886, 897 (Tex.App.-El Paso 1995, pet. ref'd).

TEX. PEN.CODE ANN. § 32.48 (Vernon Supp.2002), Simulating Legal Process, provides in relevant part:

(a) A person commits an offense if the person recklessly causes to be delivered to another any document that simulates a summons, complaint, judgment, or other court process with the intent to:

(1) induce payment of a claim from another person; or

(2) cause another to:

(A) submit to the putative authority of the document; or

(B) take any action or refrain from taking any action in response to the document, in compliance with the document, or on the basis of the document.

(b) Proof that the document was mailed to any person with the intent

that it be forwarded to the intended recipient is a sufficient showing that the document was delivered.

(c) It is not a defense to prosecution under this section that the simulating document:

(1) states that it is not legal process; or

(2) purports to have been issued or authorized by a person or entity who did not have lawful authority to issue or authorize the document.

(d) If it is shown on the trial of an offense under this section that the simulating document was filed with, presented to, or delivered to a clerk of a court or an employee of a clerk of a court created or established under the constitution or laws of this state, there is a rebuttable presumption that the document was delivered with the intent described by Subsection (a).

The information stated:

[o]n or about the 14th day of August, 2000 and before the making and filing of this information, SAMUEL SALDANA, JR., hereafter styled the Defendant, was then and there, with intent to cause Joe Ramirez to submit to the putative authority of the document, recklessly cause to be delivered to Joe Ramirez a document that simulated court process, to-wit: a Notice to Appear, by delivering the document by the United States Mail, . . . .

The application paragraph in the charge to the jury read:

Now, in Cause No. 00–4807 if you find from the evidence beyond a reasonable doubt that on or about the 14th day of AUGUST, 2000 in Ector County, Texas, the Defendant, SAMUEL SALDANA, JR., hereafter styled the Defendant, did then and there with intent to cause Joe Ramirez to submit to the putative au-

thority of the document, recklessly cause to be delivered to Joe Ramirez a document that simulated court process, to wit: a Notice to Appear, by delivering the document by the United States Mail, then you will find the Defendant Guilty of the offense of Simulating Legal Process as charged in the information in Cause No. 00–4807. Unless you so find beyond a reasonable doubt, or if you have a reasonable doubt thereof, you will find the Defendant "Not Guilty."

Appellant maintains that the evidence is insufficient because the "Notice to Appear" language in the information does not qualify as legal process due to the lack of a time or date to appear. We have been unable to find any cases from this jurisdiction construing the statute in question. The phrase "or other court process" in the statute leads us to the conclusion that the statute contemplates that the ". . . summons, complaint, judgment" is necessarily couched in terms of a judicial process. The common usage dictionary defines "judicial process" as "the series of steps in the course of the administration of justice through the established system of courts." WEBSTER'S THIRD INTERNATIONAL DICTIONARY 1223 (1993). By contrast, Black's Law Dictionary gives "judicial process" two meanings:

In a wide sense, this term may include all the acts of a court from the beginning to the end of its proceedings in a given cause; but more specifically it means the writ, summons, mandate, or other process which is used to inform the defendant of the institution of proceedings against him and to compel his appearance, in either civil or criminal cases.

BLACK'S LAW DICTIONARY 1205 (6th ed.1990). In construing a similar statute with some similar wording as the statute before us, one North Carolina court has held that the use of legal phrases in a

document that are commonly found in leases, deeds, contracts and other papers that are not and do not purport to be court processes are not sufficient to constitute a simulated court process in violation of that statute. This also applies to documents where signatures are notarized. *See State v. Watts*, 38 N.C.App. 561, 248 S.E.2d 354, 354–55 (1978, review denied). Further, documents that use language that possibly indicates judicial process do not constitute such process if the documents are not issued in the name of a court; but rather, an individual. *Id.*

In the present case, we do not perceive that the "Notice to Appear" constitutes an abuse of the statute. This phrase references the fact that the citation itself is a notice to appear and does not call upon the recipient of the papers to appear. Citing *Gollihar v. State*, 46 S.W.3d 243, 257 (Tex.Crim.App.2001), the State maintains that any variance that occurred between the working of the information regarding the "Notice to Appear" allegation and the proof at trial is not fatal in that the information informed Appellant of the charges against him, and there was no risk of later being prosecuted for the same crime. In *Gollihar*, the Court of Criminal Appeals held that a variance between the working of a charging instrument and the evidence presented at trial is fatal only if the variance is material and prejudices a defendant's substantial rights. *Id.*, at 257. However, in this instance, we are concerned with a failure of the proof at trial as opposed to a variance. Further, we do not perceive that the disjointed legalese contained in the three packets constitutes judicial process as having emanated from a court. *See State v. Sullivan*, 143 Wash.2d 162, 19 P.3d 1012, 1014–23 (2001). As such, the State failed to meet its evidentiary burden. Issue No. One is sustained. In light of the foregoing, we find it unnecessary to respond to Issues No. Two and Three.

Having sustained Appellant's Issue No. One, and further finding it unnecessary to address any remaining issues on review, we reverse the judgment of the trial court and render a judgment of acquittal.