BRIAN MILLSAP V. SHOW TRUCKS USA, INC.



NO. 07-02-0356-CR





IN THE COURT OF APPEALS



FOR THE SEVENTH DISTRICT OF TEXAS



AT AMARILLO



PANEL C 



FEBRUARY 26, 2003


______________________________



ESAU RODRIGUEZ,




 Appellant


v.



THE STATE OF TEXAS, 




 Appellee

_________________________________



FROM THE 222ND DISTRICT COURT OF DEAF SMITH COUNTY;



NO. CR99K-099; HON. DAVID WESLEY GULLEY, PRESIDING


_______________________________



ABATEMENT AND REMAND


__________________________________


Before JOHNSON, C.J., and QUINN and REAVIS, JJ.

 Esau Rodriguez (appellant) appeals his conviction for attempted sexual assault. 
The clerk's record was filed on January 7, 2003. The reporter's record and supplemental
reporter's records were filed on January 7, 2003. Thus, appellant's brief was due on
February 6, 2003. However, one was not filed on that date. By letter dated February 13,
2003, we notified appellant's counsel of the expired deadline and directed him to respond
to our notification of same by Monday, February 24, 2003, or the appeal would be abated
to the trial court pursuant to Tex. R. App. P. 38.8. Instead of filing his brief, appellant
moved for an extension of the briefing deadline. However, the extension sought was to
February 21, 2003. That date has lapsed, and appellant still has yet to file a brief. 

 Consequently, we abate this appeal and remand the cause to the 222nd District
Court of Deaf Smith County (trial court) for further proceedings. Upon remand, the trial
court shall immediately cause notice of a hearing to be given and, thereafter, conduct a
hearing to determine the following:

 1. whether appellant desires to prosecute the appeal;

 

 2. whether appellant is indigent; and,


 3. whether appellant has been denied the effective assistance of
counsel due to counsel's failure to timely file a brief. See Evitts v.
Lucey, 469 U.S. 387, 394, 105 S. Ct. 830, 834-35, 83 L. Ed.2d 821,
828 (1985) (holding that an indigent defendant is entitled to the
effective assistance of counsel on the first appeal as of right and that
counsel must be available to assist in preparing and submitting an
appellate brief). 

 We further direct the trial court to issue findings of fact and conclusions of law
addressing the foregoing subjects. Should the trial court find that appellant desires to
pursue this appeal, is indigent, and was denied effective assistance of counsel, then we
further direct the court to appoint new counsel to assist in the prosecution of the appeal. 
The name, address, phone number, telefax number, and state bar number of the new
counsel who will represent appellant on appeal must also be included in the court's
findings of fact and conclusions of law. Furthermore, the trial court shall also cause to be
developed 1) a supplemental clerk's record containing the findings of fact and conclusions
of law and 2) a reporter's record transcribing the evidence and argument presented at the
aforementioned hearing. Additionally, the trial court shall cause the supplemental clerk's
record to be filed with the clerk of this court on or before March 24, 2003. Should
additional time be needed to perform these tasks, the trial court may request same on or
before March 24, 2003.

 It is so ordered.

 Per Curiam

Do not publish.



e" Priority="39" Name="toc 9"/>
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 
 









 

NO. 07-09-00182-CR

 

IN THE COURT OF APPEALS

 

FOR THE
SEVENTH DISTRICT OF TEXAS

 

AT
AMARILLO

 

PANEL E

 



JULY
12, 2010

 



 

MICHAEL RUNNINGWOLF, APPELLANT

 

v.

 

THE STATE OF TEXAS, APPELLEE 



 



 

 FROM THE COUNTY COURT OF FLOYD
COUNTY;

 

NO. 10,036; HONORABLE PENNY GOLIGHTLY, JUDGE



 



 

Before QUINN,
C.J., and HANCOCK, J., and BOYD, S.J.[1]

 

 

OPINION

 

 

            A Floyd County jury found appellant,
Michael Runningwolf, guilty of simulating legal
process[2]
and assessed punishment at confinement for one year in the Floyd County Jail
and a $4,000.00 fine.  We affirm. 

 

Factual and Procedural History

            A
state court awarded custody of three children to Helen Coleman, paternal
grandmother of one of the children and great aunt of another, T.G.  T.G.s paternal grandmother, Venita Glenn, and Glenns sisters and mother were
associated with a church led by Runningwolf and were
displeased that Coleman had custody of T.G.

            In
May 2008, Glenns sister, Jerlene Ledbetter, served
a document on Coleman in front of Colemans house.  Coleman dropped the document and left it on
the sidewalk.  Minutes later, appellant,
along with some of Glenns relatives, drove up to Colemans house.  Appellant got out of the car and placed the
document in Colemans mailbox.  Coleman
got the document and called the police. 
The document delivered to her was styled Non-Statutory Abatement (the
Abatement) and referred to the custody of T.G. in terms of ecclesiastical
law, contempt of court, and default judgment.

            Appellant
was charged with simulating legal process. 
The jury found him guilty of this Class A misdemeanor and assessed
punishment at one year in the Floyd County Jail and a fine of $4,000.00.  He timely appealed his conviction, bringing
six issues before this Court:  (1) the
acceptance of appellants plea was structural error and rendered the
subsequent trial a nullity; (2) the evidence was legally insufficient to
support his conviction; (3) the evidence was factually insufficient to support
his conviction; (4) the trial court erred by overruling his objection that the
statute is facially overbroad and, therefore, a violation of his rights to
freedom of speech and free exercise of his religion; (5) the trial court erred
by overruling his objection that the statute is facially unconstitutionally
vague and, therefore, a violation of his rights to freedom of speech and free
exercise of his religion; and (6) the trial court erred by overruling his
objection that, as applied, the statute violated his rights to freedom of
speech and free exercise of his religion.

Plea to Charges

            After
the information was read and the trial court asked appellant how he pleaded to
the charges, appellant responded [b]ar to
prosecution.  The jury charge, to which
no objection was made, stated that appellant pleaded not guilty.  After the jury was charged, it sent out a
note asking what appellant originally said instead of not guilty.  To this note, the trial court responded [b]ar to prosecution, and neither side objected.

            Appellants
contention is premised on his position that the trial court accepted his
irregular plea.  We do not read the
record in such a manner.  As the jury
charge shows, the trial court entered a plea of not guilty on appellants
behalf. [3]  And it did so properly.  

            A
plea must be entered in every criminal case, and if no plea is entered, the
trial is a nullity.  Lumsden v. State, 384
S.W.2d 143, 144 (Tex.Crim.App. 1964).  [I]f the defendant answers that he is not
guilty, such plea shall be entered upon the minutes of the Court; if he refuses
to answer, the plea of not guilty shall in like manner be entered. Tex. Code Crim. Proc. Ann. art. 26.12
(Vernon 2009).  Article 27.16(a)
imposes a duty on the trial court to enter a not guilty plea in the absence of
action by the defendant.  Mendez v. State, 138 S.W.3d 334, 343 (Tex.Crim.App.
2004) (citing Tex. Code Crim. Proc. Ann. art. 27.16(a)
(Vernon 2006)).

            So,
the trial court did not err by entering a plea of not guilty on appellants
behalf; it was duty-bound to do so when appellant insisted on declaring [b]ar to prosecution when asked to plead to the charges
against him.[4]  See Coyle v. State, 775 S.W.2d 843, 846 (Tex.App.Dallas
1989, no pet.) (holding that the trial court did not err when it entered a not
guilty plea pursuant to article 27.16 for the defendant who, when asked to
plead to the charges, responded that she was innocent of violating the
contract with the State of Texas, because no contract exists); Halbert v. State, No. 05-96-01438-CR, 1999 Tex.App. LEXIS 384, at *5 (Tex.App.Dallas Jan. 22, 1999, no pet.) (mem. op., not designated for publication) (observing that the county court entered a not guilty plea
for appellant after he refused to plead guilty or not guilty and, instead,
stated, I enter a plea of I don't understand the nature of the charge).

            The
trial court did not accept appellants statement of [b]ar
to prosecution as his plea to the charges against him.  Instead, the trial court properly entered a
plea of not guilty on appellants behalf. 
We overrule appellants first issue.

Sufficiency of the Evidence

Standards of Review

            In
assessing the legal sufficiency of the evidence, we review all the evidence in
the light most favorable to the verdict to determine whether any rational trier of fact could have found the essential elements of
the offense beyond a reasonable doubt.  Jackson
v. Virginia, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed. 560
(1979); Laster v. State, 275 S.W.3d
512, 517 (Tex.Crim.App. 2009).  In conducting a legal sufficiency review, an
appellate court may not sit as a thirteenth juror, but rather must uphold the
jurys verdict unless it is irrational or unsupported by more than a mere
modicum of evidence.  Moreno
v. State, 755 S.W.2d 866, 867 (Tex.Crim.App.
1988).

            In
a factual sufficiency review, we review all the evidence in a neutral light to
determine whether the evidence supporting the verdict is so weak or is so
outweighed by the great weight and preponderance of the evidence that the trier of facts verdict is clearly wrong or manifestly
unjust.  Roberts v.
State, 220 S.W.3d 521, 524 (Tex.Crim.App. 2007); Watson
v. State, 204 S.W.3d 404, 41415 (Tex.Crim.App.
2006).  In performing a factual
sufficiency review, we must give deference to the trier
of facts determinations if supported by evidence and may not order a new trial
simply because we may disagree with the verdict.  See Watson, 204
S.W.3d at 417.  We are not
justified in ordering a new trial unless there is some objective basis in the
record demonstrating that the great weight and preponderance of the evidence
contradicts the jurys verdict.  See
id.  An appellate courts opinion
addressing factual sufficiency must include a discussion of the most important
evidence that appellant claims undermines the jury's
verdict.  Sims v.
State, 99 S.W.3d 600, 603 (Tex.Crim.App. 2003).

Analysis

            A
person commits the offense of simulating legal process if he or she recklessly
causes to be delivered to another any document that simulates a summons,
complaint, judgment, or other court process with the intent to . . . cause
another to submit to the putative authority of the document; or take any action
or refrain from taking any action in response to the document, in compliance
with the document, or on the basis of the document.  Tex.
Penal Code Ann. § 32.48(a)(2).  When we interpret a statute, we look to the
literal text for its meaning, and we ordinarily give effect to that plain
meaning, unless the plain language is ambiguous or the application of the
statute's plain language would lead to absurd consequences that the Legislature
could not possibly have intended.  State v. Webb, 12 S.W.3d 808, 811 (Tex.Crim.App.
2000).  That said, appellants contention that section 32.48s legislative
history indicates its purpose is to prevent fraudulent action, presumably by
such organizations as the so-called Republic of Texas is not
persuasive.  Nothing in section 32.48s
text limits its application to those involved in specific organizations.  We, then, look to the literal text of section
32.48 and apply its plain meaning to the evidence before us.

            Appellant
relies on Saldana v. State, 109 S.W.3d 4 (Tex.App.El
Paso 2002, no pet.), to support his challenge to the sufficiency of the
evidence, characterizing Saldana as functionally
indistinguishable.  Saldana
appears to be the only published case directly addressing the sufficiency of
the evidence to support a conviction for simulating legal process.  Saldana had been issued a citation for
running a stop sign.  He was later
convicted of three counts of simulating legal process stemming from several
documents he sent by certified mail to the officer who had issued that traffic
citation.  Id.
at 5.

            After
describing the documents, which included references to a Notice to Appear,
the court concluded that the Notice to Appear, as charged in the indictment,
was a reference to the traffic citation itself, did not call upon the officer
to appear, and, therefore, did not violate section 32.48.  Id. at 10.  Further, the court did not perceive the
documents disjointed legalese as judicial process having emanated from a
court.  Id.  Consequently, it reversed the judgment and
rendered a judgment of acquittal.  Id.

            The Fort Worth court, in Gibbs v. State, No. 02-04-00563-CR,
2006 Tex.App. LEXIS 1896, at *3 (Tex.App.Fort Worth Mar. 9, 2006, pet. refd)
(mem. op., not designated for publication),
questioned Saldanas reliance on a North Carolina case interpreting a
North Carolina provision and read Saldana as creating an inappropriate
distinction, based on North Carolina law, between papers signed by an
individual and those purporting to be issued by a court.[5]  Id. 
This distinction, according to Gibbs, is not consistent with
section 32.48 which, in pertinent part, provides as follows:

(c) It is not a defense to prosecution under this section that the
simulating document:

(1) states that it is not legal process; or

(2) purports to have been issued or authorized
by a person or entity who did not have lawful authority to issue or authorize
the document.

Id. at *3*4 (quoting Tex. Penal Code Ann. § 32.48(c)).

            After
having expressed its disapproval of the distinction suggested by Saldana,
the Gibbs court went on to evaluate the legal sufficiency of the
evidence.  Id.
at *4*7.  Because Gibbs believed
that his father was being mistreated at the county jail and that the sheriff
was responsible for the mistreatment, Gibbs sent the sheriff two documents, an
Administrative Notice of Failure of Adhering to Policy and Customs
Regulations and a Notice of Default of Administrative Notice of Failure of
Adhering to Policy and Custom Regulations and Bill for Damages.  Id. at *2.

            The
evidence in Gibbs showed that the documents (1) were served on the
sheriff by registered mail; (2) used terms common in civil process and
litigation, such as declarant and respondent; (3)
cited legislative authority and case law; (4) contained a warning that a default
or failure to answer will stand[] as a judgment nihil
dicit; (5) required the sheriff to respond under
penalty of perjury; (6) demanded payment in the amount of $44,000,000; (7)
purported to be a judgment that could be abstracted to collect the money
demanded, (8) were signed by Appellant, verified, and notarized; and (9)
contained four certificates of service which, the court observed, are commonly
used in civil litigation to show that the legal document has been served upon
the other parties to the litigation.  Id. at *4*6. 
The court also noted that the record included a petition filed by Gibbs
in an attempt to enforce the declaration of default set forth in the second
document.  Id.  The court held the evidence was
sufficient.  Id.
at *6*7.

            Here,
appellants contentions appear to challenge the sufficiency of the evidence to
show that the Abatement simulated court process and that he delivered it with
the intent to cause Coleman to comply with the document.  We disagree.

            The
Abatement consists of ten pages and a wealth of declarations and maxims
seemingly designed to undermine the validity of the custody arrangement through
state courts and to persuade the named Defendants to recognize the supremacy of
the ecclesiastical court sitting in Floydada, Texas, by submitting the custody
matter to its authority.  On the top of
the first page is the large, bold-faced heading Kingdom of Heaven Ecclesiastic
Court.  Also on the front page is the
Official Seal bearing religious symbols and Latin phrases.  The document begins with the pronouncement
that, [b]y the Authority and Power delegated to me solely by the Grace of God, . . . I, an ordained Minister of His Gospel, . . .
issue this Non-Statutory Abatement.  The
Abatement names Glenn and her relatives, in their respective relation to
T.G., as Demandmants and names six Defendants.[6]  It goes on to demand[]
the compliance of a Court Order issued by the ecclesiastic court and explains
that a Default and Default Judgment was Lawfully granted and issued in the
matter.  It outlines eight counts
against the Defendants in terms such as contempt and conspiracy.

            Under
its Declaration of Authority and Jurisdiction, the Abatement cites several
cases discussing the authority of ecclesiastic courts and outlines the
punishment for conspiracy against rights under listed circumstances,
including kidnapping in bold letters, as a fine or imprisonment for any term
of years or for life, or both, or may be sentenced to death.  The Abatement was issued by and under the
Ministerial Power and Authority vested solely in and appertaining to the
Ministerial Office of Christ . . . and in Lawful execution of His Judgments
declared therein by Him against [the named Defendants].

            It
repeatedly condemns the Defendants noncompliance with and contempt of the
ecclesiastic court and describes the Defendants Marks of Deceit and actions
of outlawry through color of law:

Your actions, or lack thereof, are not sealed with
Authority evidencing lineage through His Body . . . traceable to the Tree of
Life, and are, therefore, a Trespass against His Dominions and a breach of the
Peace of our Lord and Savior Jesus, the Christ, in a vain attempt to circumvent
His righteous Judgment upon the world and its darkness.

The Abatement
characterized the Defendants actions as scandalous and libelous.

            It
then directs the Defendants to lay and prove in His Lawful ecclesiastic court
that you bear the Seal and Testimony of the Most High in the Christ.  The ecclesiastic court so orders the said
Defendants to abate their willful and odious actions of non-compliance and
various acts of contempt by showing cause in the ecclesiastic court why the
abatement should not lie.  The
Abatement warns that failure to obey this Lawful order of and from His
Lawful ecclesiastic court or failure to respond in the time prescribed . . .
will result in Default and Default Judgment. 
It then directs that [a]ll remittance of this
instant Cause should be sent to the ecclesiastic court in Floydada.  Though the Abatement was not filed, it
concludes with the following announcement:

For the next eight weeks concerning this instant Lawful Cause, to edify
in particular all Christians and fellow bondservants sojourning in and with our
Lord . . . and for public viewing in general, a Public Notice of this
Non-Statutory Abatement and Default Rule Day is posted for Public Record at the
Floyd County Courthouse, in Floydada, Texas; and in several other places for
all the world to Witness, Record, and have Knowledge.

            Deriving
guidance from the analysis in Gibbs, we hold that the question of
whether a document simulates court process may be answered by reference to the
following non-exhaustive list of relevant considerations: (1) the use of terms
commonly used in litigation and citation to legal authority, (2) the method of
delivery,[7]
(3) the presence of a demand or directive, (4) the nature of any demand or
directive, (5) the documents internal characterization of its import, and (6) the
presence and extent of formalities generally associated with process, such as
declarations, cause numbers, seals, or captions.  Applying these considerations to the instant
case, we see that, much like the documents in Gibbs, the Abatement
makes extensive use of legal terms, designations, and citation.  The Abatement includes several references
to a default judgment issued by the ecclesiastic court.  Although the Abatement does not include a
cause number, it does make clear that it specifically concerns the legal matter
of child custody and attempts to undermine the validity of the secular courts
resolution of that legal matter.  It also
expressly sought a response from Coleman and the other Defendants by demanding
that she, along with the other Defendants, answer in the ecclesiastic
court.  It outlines pending counts
against the Defendants and suggests the range of punishment to which they may
be subject.  The use of an official
seal and the repeated pronouncements of the supremacy of the ecclesiastic
court lend further support to the conclusion that the Abatement simulates
court process.  And the declaration that
the Abatement would be posted at the courthouse and elsewhere also sounds of
the formalities associated with court process.

            Because
it was another party, rather than appellant, who had earlier handed the
Abatement to Coleman and said that Coleman had been served, we note that
the method of appellants delivery in the instant case does not lend a great
deal to the conclusion that the Abatement simulated court process.  It does not lend itself to a contrary finding
either.  And, although some of the
phrases used within the Abatement could be characterized as disjointed
legalese in that those trained in the law may recognize that the terms are not
used properly, we do not think appellants misuse of legal terms necessarily
establishes that the Abatement does not simulate court process.  On this point, and to the extent Saldana
stands for the proposition that we gauge the precision of usage of legal terms
by our own internal standards of usage, we respectfully disagree with our
sister courts position.[8]  See 109 S.W.3d
at 10.  Viewing the evidence in a light
most favorable to the jurys verdict, we conclude that a rational trier of fact could have found that the Abatement
simulated court process.    

            Appellant
maintains that to sustain a conviction, any putative court document must
have at least some threshold plausibility as legal process.  To the extent he is addressing the actual
authority of the person or court issuing the document, we point out that it
is not a defense to prosecution that the simulating document purports to have
been issued or authorized by a person or entity who
did not have lawful authority to issue or authorize the document.  Tex.
Penal Code Ann. § 32.48(c)(2).

            Appellant
also directs our attention to Colemans lack of concern as evidence the
Abatement was not a simulating document. 
Instead, he characterizes the Abatement as a statement[9]
of the churchs disapproval of Colemans custody of
T.G.  The recipients
understanding of or reaction to the document does not conclusively
determine whether the document simulated court process.  Cf. Saldana, 109 S.W.3d at 5,
10 (finding the evidence insufficient even when the recipient officer thought
he was being sued and the IRS sent him an inquiry based on copies it received
from appellant).  Instead, our review on
this element should focus on the document. Based on such review, we conclude
that there is also factually sufficient evidence to support the jurys finding
that the Abatement simulated court process.

            As
to requisite intent, the Abatement itself provides some evidence of intent in
that it demanded compliance with the ecclesiastic courts default judgment and
repeatedly condemned the conduct of the Defendants.  It specifically demanded that the Defendants
answer before the ecclesiastic court or show cause why
the Abatement should not lie.  Further,
Glenn testified that, after discussing the Abatement with appellant, she
signed it in the belief that the Abatement would help her regain custody of
T.G.  The investigating officer testified
that appellant insisted that federal law and ecclesiastic sovereignty
authorized him to issue and enforce the papers. 
Based on such evidence viewed in a light most favorable to the verdict,
the jury could have reasonably found that appellant delivered the Abatement
with the requisite intent.  

            To
support his position, appellant relies on evidence that Coleman knew the people
associated with the document held no legal authority, that she was not at all
troubled by the document.  However, the
recipients reaction to the papers is not an element of the offense.  See Ebert v. State, Nos.
03-06-00752-CR to 03-06-00759-CR, 2007 Tex.App. LEXIS 5952, at *16 (Tex.App.Austin July
27, 2007, no pet.) (mem. op., not designated
for publication) (concluding, in response to arguments
that the clerks office did not immediately file-stamp documents, that the
offenses were complete upon [appellant]s creation, presentation, and delivery
of the documents to the clerk's office without regard to whether or when the
clerk filed them).  Nor do we interpret
Colemans reaction relevant to appellants intent.  Section 32.48 makes no mention whether the
recipient must take the document seriously or attempt to comply with the
documents demands or instructions. 
Therefore, it is the intent of the actor, not the reaction of the recipient, that we must examine.  Having viewed the evidence in a neutral light
and considered the evidence on which appellant relies, we conclude that the
evidence is also factually sufficient to support the finding that appellant
delivered the document with the requisite intent that Coleman submit to the
putative authority of the document or that she act or refrain from acting in
response to the documents directives.

            Having
found that legally and factually sufficient evidence supports the conviction,
we overrule appellants second and third issues.

Constitutional Issues

Preservation of Error

            A
defendant must raise an as-applied constitutional challenge in the trial court
to preserve it for appellate review.  See
Curry v. State, 910 S.W.2d 490, 496 (Tex.Crim.App. 1995). 
The Texas Court of Criminal Appeals has clarified that a facial
challenge is subject to the same error-preservation requirement: a defendant
may not raise for the first time on appeal a facial challenge to the
constitutionality of a statute.  Karenev
v. State, 281 S.W.3d 428, 434 (Tex.Crim.App.
2009).

            In
his pro se motion to suppress, filed prior to appointment of counsel,
appellant referred to equal protection and due process in the context of
recognition of ecclesiastical courts.  He
urged that [under] the Ecclesiastical Abstention Doctrine[,]
the First Amendment of the U.S. Constitution forbids [the] Court from inquiring
into religious doctrine, BELIEFS, or principles.  He sought to suppress any evidence connected
to the Ecclesiastical Court.  In his pro se
motion to dismiss, also filed prior to appointment of counsel, appellant
challenged the trial courts subject matter jurisdiction on 

the basis that the Prosecutors Official Oppression of the Defendant
are [sic] questions and controversies involving Ecclesiastical [sic], involving
doctrine[,] creed[,] and worship, exercise of ones faith[,] and establishing
and enforcing needful laws and regulations within the religious association,
all legitimate and real, not simulating anything.

He urged that his faith
and beliefs are beyond preview [sic] by this Court.

            Defense
counsel announced that he reiterated the pro
se motion to dismiss, without
elaborating or explaining the basis of such motion, and added

that
under the Full Faith and Credit Clause of the United States Constitution,
through the 14th Amendment of the United States Constitution, which applies to
all of the state[s], this is a matter of Ecclesiastical law, which basically,
pertains to federal [law].  And federal
preempts state law, Your Honor.  And it
is our position that this Court does not have jurisdiction to hear this matter
here today.

He responded to the
States position also in terms of preemption and ecclesiastical law.

            Defense
counsels contentions regarding full faith and credit and federal preemption
are fairly clear and would likely have preserved error as to those issues.  Those issues, however, are not presented to
this Court on appeal.  We read nothing in
appellants pro se motions or in the re-urging of the motion to dismiss that goes
to overbreadth or vagueness of the statute.  Nor do we read anything that would serve as a
specific objection regarding freedom of speech. 
Appellant has, therefore, failed to preserve for our review his
challenges to section 32.48 in terms of overbreadth,
vagueness, or freedom of speech. 
Accordingly, we overrule those issues.

Free Exercise of Religion

            Government
action may burden the free exercise of religion, in violation of the First
Amendment,[10]
in two quite different ways: by interfering with a believer's ability to
observe the commands or practices of his faith and by encroaching on the
ability of a church to manage its internal affairs.  Westbrook v. Penley, 231 S.W.3d 389, 395 (Tex. 2007).  In appellants pro se motions, he refers
to the exercise of ones faith.  More
specifically, he raised the issue of ecclesiastical abstention in the trial
court and cites to cases concerning this doctrine on appeal.  His arguments are directed at the trial
courts jurisdiction over this matter, not the constitutionality of section
32.48.  So, it appears the judiciarys
exercise of jurisdiction over the matter, rather than the Legislatures
enactment of section 32.48, is the target of his challenge.  We, then, will address that aspect of the
constitutional issue he now presents on appeal; we will determine whether the
trial courts exercise of jurisdiction violated appellants right to free
exercise of religion by encroaching on the ability of his church to manage its
internal affairs.

            The
Constitution forbids the government from interfering with the right of
hierarchical religious bodies to establish their own internal rules and
regulations and to create tribunals for adjudicating disputes over religious
matters.  See Serbian E.
Orthodox Diocese v. Milivojevich, 426 U.S. 696,
70809, 72425, 96 S.Ct.
2372, 49 L.Ed. 2d 151 (1976).  Based on this constitutionally-mandated
abstention, secular courts may not intrude into the church's governance of
religious or ecclesiastical matters, such as theological controversy,
church discipline, ecclesiastical government, or the conformity of members to
standards of morality.  See In
re Godwin, 293 S.W.3d 742, 748 (Tex.App.San
Antonio 2009, orig. proceeding).

            The
record shows that Coleman, to whom the Abatement was delivered, was not a
member of appellants church.  That being so, the churchs position on the custody matter is not a
purely ecclesiastical matter over which the trial court should have abstained
from exercising its jurisdiction. 
This is not an internal affairs issue because the record conclusively
establishes that the recipient is not a member of the church.  The ecclesiastical abstention doctrine does
not operate to prevent the trial court from exercising its jurisdiction over
this matter.  We overrule appellants
final issue.

Conclusion

            Having
overruled appellants issues, we affirm the judgment of conviction.

 

 

 

                                                                                                Mackey
K. Hancock

                                                                                                            Justice

Publish.











[1]
John T. Boyd, Chief Justice
(Ret.), Seventh Court of Appeals, sitting by assignment.  





[2]
See Tex.
Penal Code Ann. § 32.48
(Vernon 2003).

 





[3]
To the extent appellants contentions complain
of the trial courts entry of a not guilty plea on his behalf, such error was
not preserved.  Failure to object to the
trial court's entry of a plea is waived if it is not raised in the trial
court.  Tex.
R. App. P. 33.1(a)(1); Seale v. State,
158 Tex.Crim. 440, 256 S.W.2d 86,
88 (1953) (op. on reh'g); Cantu v. State, 939
S.W.2d 627, 646 (Tex.Crim.App. 1997).
Appellant failed to object to the trial court's entry of a not guilty plea and
has, therefore, waived such complaint.

 





[4]
We are not persuaded by
appellants argument that [b]ar to prosecution, as he
used the phrase, is in the nature of a special plea.  See Tex.
Code Crim. Proc. Ann. art.
27.10 (Vernon 2006). 
Article 27.05 defines a defendants only special plea and does not
include a plea like appellants declaration. 
Id. art. 27.05 (Vernon
2006).  Further, [e]very special
plea shall be verified by the affidavit of the defendant.  Id. art. 27.06 (Vernon 2006). 
Appellants declaration is more in the nature of a refusal to plead
which invoked the trial courts duty to enter a not guilty plea for appellant.  Id. art. 27.16(a).





[5]
The North Carolina case held
that documents that use language that possibly indicates judicial process do
not constitute such process if the documents are not issued in the name of a
court; but rather, an individual.  See State v. Watts, 248 S.E.2d 354, 35455 (N.C. Ct. App.
1978, rev. denied).





[6] The Defendants are Floyd County
Sheriffs Department, Floydada Police Department, Attorney Lex
Harrington, Child Protective Services, Coleman, and Monica Wickware.





[7]
We recognize that the method of
delivery will ordinarily go to the element of intent.  See Tex.
Penal Code Ann. § 32.48(d)
(creating a rebuttable presumption that a person acts with the requisite intent
when he or she files the document of record).  Nonetheless, the manner in which the document
at issue was delivered may also be relevant to whether the document simulates
court process.  See Gibbs,
2006 Tex. App. LEXIS 1896, at *5 (noting evidence that the documents in
question were delivered by registered mail and testimony that registered mail
is commonly used in litigation to show that a party has received a sent
document).





[8]
That is, to the extent Saldana
stands for the proposition that usage of legal terms must be so precise that we
could perceive it as having emanated from a court, we disagree.  See 109 S.W.3d
at 10.  Of course, a document that uses
legal terminology in a clearly ridiculous or jocular fashion would not be a
simulating document.  However, we do
not think that, to simulate process, a document must be so precise in its usage
that those trained in the law would perceive it as having emanated from a
court.  We should be cautious in our
review of the document that we do not engage in a full-fledged review of the
merits of the document.  Part of our
daily activity as an appellate court is to thoroughly assess the viability of
assertions made, but we should stop short of such an assessment when we examine
the substance of a document to determine whether it sufficiently simulates court
process.





[9]
Appellant also points out that
the Abatement was not filed.  Section
32.48 does not require that the papers at issue be filed and appears to
contemplate situations in which documents are not filed.  It creates a rebuttable presumption of the
requisite intent when, on the other hand, it appears the documents at issue were filed.  Tex. Penal Code Ann. § 32.48(d).  A plain reading of the provision permits
delivery to a person by other means; to read it as requiring filing would
render subsection (d) unnecessary.

 





[10]
The First Amendment of the
United States Constitution, applicable to the states through the Fourteenth
Amendment, provides: Congress shall make no law respecting an establishment of
Religion, or prohibiting the free exercise thereof. U.S. Const. amend. I, XIV.