

# IN THE COURT OF CRIMINAL APPEALS
# OF TEXAS

### NO. PD-0997-10

**MICHAEL RUNNINGWOLF, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW
### FROM THE SEVENTH COURT OF APPEALS
### FLOYD COUNTY

**MEYERS, J., delivered the opinion of the Court in which PRICE, KEASLER, HERVEY, COCHRAN, and ALCALA, JJ., joined. WOMACK and JOHNSON, JJ., concurred in the result. KELLER, P.J., filed a dissenting opinion.**

## O P I N I O N

Michael Runningwolf appealed his conviction for simulating legal process under

Texas Penal Code § 32.48, claiming that the evidence was legally insufficient to support

the jury's guilty verdict. The Amarillo Court of Appeals affirmed the trial court's

judgment. *Runningwolf v. State*, 317 S.W.3d 829 (Tex. App.—Amarillo 2010, pet.

granted). This Court granted Appellant's petition for discretionary review to resolve a conflict among the courts of appeals regarding the appropriate way to determine whether a document simulates legal process. We affirm Appellant's conviction because the evidence is legally sufficient to sustain the verdict.

## I. BACKGROUND

### *A. Facts*

A state court awarded custody of T.C. to her great aunt, Helen Jean Coleman, after Texas Child Protective Services removed the child from her grandmother's home. The grandmother, Venita Glenn, and members of Glenn's family were associated with Appellant and his church.

Appellant prepared a document entitled, "Non-Statutory Abatement." The Abatement is ten pages long and contains legal terminology and citations, an "Official Seal," and a declaration of authority and jurisdiction. It purports to prove the supremacy of ecclesiastical laws through assertions such as "the 1876 Constitution of the State of Texas and its Preamble placed ecclesiastic courts above all civil, criminal, or military courts." The document contains eight counts against Coleman and other listed entities and persons and states that "failure to obey this Lawful order" will result in "Default Judgment." The Abatement ends by asserting that "[f]or the next eight weeks concerning this instant Lawful Cause . . . a Public Notice of this Non-Statutory Abatement and Default Rule Day is posted for Public Record at the Floyd County Courthouse . . . ."

Venita Glenn, Doris Ledbetter, and Yolanda Martin, relatives of T.C., signed the Abatement as "Demandants." Venita Glenn testified that Appellant explained the papers to her and she signed the document because she believed that filing the papers would help her get her granddaughter back from Coleman.

Venita Glenn's sister, Jerlene Ledbetter, brought the document to Coleman's home, handed the letter to Coleman, and stated that Coleman had been served. Coleman threw the letter on the ground. Minutes later, Appellant arrived at Coleman's home and placed the document in her mailbox. The document directed Coleman to submit the child custody matter to the authority of the ecclesiastic court sitting in Floydada, Texas.

Coleman called the police, and Officer Darrell Gooch responded. Coleman asked whether the papers were legal documents, and he advised her that they were not. The officer visited Appellant and explained that the documents were not recognized by the State of Texas and that he could be arrested for serving the papers in such a manner. Appellant responded that he had jurisdiction granted to him by the ecclesiastic court and federal law, which allowed him to bring suit against Coleman.

Appellant was later charged by information with simulating legal process. The information alleged that Appellant "recklessly cause[d] to be delivered to Helen Coleman a document that simulated a summons, judgment or other court process . . . with intent to cause Helen Coleman to submit to the putative authority of the document . . . . in violation of Texas Penal Code Section 32.48."

A jury found Appellant guilty of simulating legal process and sentenced him to one year in jail and a fine of $4,000.

**B. *Amarillo Court of Appeals***

Appellant's arguments on appeal, inter alia, were that: 1) the evidence was legally insufficient to support a conviction; 2) the statute was facially overbroad; and 3) the statute violated his rights to freedom of speech and free exercise of religion. The Amarillo Court of Appeals rejected Appellant's arguments and affirmed the conviction. *Runningwolf*, 317 S.W.3d at 841.

In overruling Appellant's legal-sufficiency claim, the court of appeals applied factors derived from *Gibbs v. State*, 2006 Tex. App. LEXIS 1896 (Tex. App.—Fort Worth 2006, pet. ref'd) (mem. op., not designated for publication), to determine whether the Abatement simulated legal process. *Runningwolf*, 317 S.W.3d at 837-38. The court examined the legal terms used by Appellant in the Abatement, as well as his intent in delivering the Abatement. *Id.* at 837-39. The court of appeals also rejected Appellant's argument that the recipient's reaction or her understanding of the document is conclusive in determining whether the document simulated legal process. *Id.* at 838-39. The court of appeals concluded "that a rational trier of fact could have found that the 'Abatement' simulated court process." *Id.* at 838.

The court of appeals overruled Appellant's assertion that section 32.48 was facially overbroad because Appellant failed to preserve his challenges to the statute for

review. *Id.* at 840.

While the ecclesiastical abstention doctrine prevents secular courts from intruding into the church's governance of ecclesiastical matters, the court overruled that issue on the ground that the ecclesiastical abstention doctrine does not apply where the matter involves individuals who are not church members. *Id.* at 841. (*citing* In re *Godwin*, 293 S.W.3d 742, 748 (Tex. App.—San Antonio 2009, pet. denied). Coleman, the recipient of the Abatement, was not a member of Appellant's church. *Id.*

### C. Court of Criminal Appeals

Appellant filed a petition for discretionary review, contending that the court of appeals erred in affirming the conviction based on: 1) the legal sufficiency of the evidence, 2) the preservation of Appellant's argument that the statute was facially overbroad, and 3) Appellant's argument that the statute infringed on his free exercise of religion. We granted review on the first issue only, and now affirm the court of appeals's judgment.

## II. STANDARD OF REVIEW

The Due Process Clause of the Fourteenth Amendment of the United States Constitution requires that a criminal conviction be supported by evidence "necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense." *Jackson v. Virginia*, 443 U.S. 307, 316 (1979). A reviewing court views the evidence in the light most favorable to the prosecution and determines whether any

rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Id.* at 319; *Laster v. State*, 275 S.W.3d 512, 517-18 (Tex. Crim. App. 2009); *Jackson v. State*, 17 S.W.3d 664, 667 (Tex. Crim. App. 2000).

The reviewing court is not to assess the evidence as a "thirteenth juror." *Moreno v. State*, 755 S.W.2d 866, 867 (Tex. Crim. App. 1988). The court's role is rather to act as a "final, due process safeguard ensuring only the rationality of the factfinder." *Id.* This standard reinforces the responsibility of the trier of fact to weigh the evidence, resolve conflicts in testimony, and draw inferences from the facts presented. *Jackson v. Virginia*, 443 U.S. at 319. Giving proper deference to the jury's role as factfinder and viewing the evidence in the light most favorable to the verdict, we will uphold the verdict unless a reasonable juror must have had a reasonable doubt as to at least one of the elements of the offense. *Narvaiz v. State*, 840 S.W.2d 415, 423 (Tex. Crim. App. 1992).

### III. SIMULATING LEGAL PROCESS

*A. Applicable Statute*

Appellant was convicted of simulating legal process under TEX. PENAL CODE § 32.48. The statute reads, in pertinent part,

> (a) A person commits an offense if the person recklessly causes to be delivered to another any document that simulates a summons, complaint, judgment or other court process with the intent to:
>     (1) induce payment of a claim from another person; or
>     (2) cause another to:
>         (A) submit to the putative authority of the document; or
>         (B) take any action or refrain from taking any action in response to the document, in compliance with the document, or on the basis of

the document.

. . .

(c) It is not a defense to prosecution under this section that the simulating document:
  (1) states that it is not legal process; or
  (2) purports to have been issued or authorized by a person or entity who did not have lawful authority to issue or authorize the document.

We granted review to determine whether the appellate court erred in holding that the State's evidence was legally sufficient to support Appellant's conviction under the statute.

**B. Texas Caselaw**

Appellant relies on *Saldana v. State*, 109 S.W.3d 4 (Tex. App.—El Paso 2002, no pet.), in which the Eighth Court of Appeals decided that the documents at issue did not constitute legal process. *Id.* at 9-10. After receiving a traffic ticket, Saldana sent signed documents to the issuing officer that made several demands in regard to the ticket. *Id.* at 5-7. The officer believed that he was being sued. *Id.* at 5. The Eighth Court of Appeals reversed the defendant's conviction. *Id.* at 10. Because there was little guidance from Texas courts, the *Saldana* court relied upon cases from North Carolina and Washington that addressed similar statutes. *See State v. Watts*, 248 S.E.2d 354, 354-55 (N.C. Ct. App. 1978, review denied), *and State v. Sullivan*, 19 P.3d 1012, 1014-23 (Wash. 2001). The *Saldana* court interpreted the North Carolina case as holding that the use of legal phrases commonly found in leases, deeds and contracts is not sufficient to support a simulation of court process conviction if the documents were not issued in the name of a court. *Saldana*, 109 S.W.3d at 9-10. Furthermore, the court relied on the Washington case to

determine that "disjointed legalese" is not sufficient evidence to support a conviction for simulation of legal process. *Id.*

The Second Court of Appeals in *Gibbs v. State* disagreed with the *Saldana* court's legal-sufficiency review and affirmed the jury's guilty verdict after a legal-sufficiency review. 2006 Tex. App. LEXIS 1896, at *7. Gibbs sent several notices to individuals whom he believed were responsible for his father's "inhumane" treatment in prison. *Id.* at *2. He demanded damages equaling one million dollars per day, signed and notarized the document, and included certificates of service. *Id.* at *5-6. The *Gibbs* court reasoned that the terms used, the method of delivery, and the presence of litigation-based documents provided sufficient evidence to support a conviction. *Id.* at *6-7.

The Third Court of Appeals in *Ebert v. State* affirmed a conviction of four counts of simulating legal process after the appellant filed abstracts of judgment with the Travis County Clerk's Office. 2007 Tex. App. LEXIS 5952, at *2 (Tex. App.—Austin July 27, 2007, no pet.) (mem. op., not designated for publication). Although the documents were not authentic legal documents, they were similar enough to induce a county attorney to order the papers filed and to have the debtors notified. *Id.* at *5. The filing of the documents created a rebuttable presumption that the appellant had the intent necessary to support the conviction. TEX. PENAL CODE § 32.48(d); *id.* at *14. The appellant complained that the clerk's file stamp dates did not match, which likely occurred as the clerk's office determined whether the documents should be filed. *Id.* at *16. However, the

*Ebert* court held that the reactions of the clerk's office personnel did not change the fact that the offense had been committed. *See id.*

In the instant case, the Seventh Court of Appeals used the reasoning in *Gibbs* to develop a non-exhaustive list of relevant factors to determine whether a document simulates legal process. *Runningwolf*, 317 S.W.3d at 837. Those factors include the following:

> (1) the use of terms commonly used in litigation and citation to legal authority, (2) the method of delivery, (3) the presence of a demand or directive, (4) the nature of any demand or directive, (5) the document's internal characterization of its import, and (6) the presence and extent of formalities generally associated with process, such as declarations, cause numbers, seals or captions.

*Id.* The list provides a useful guide to assess whether a document simulates legal process, but an appellate court should not limit itself to these factors. A court should also consider whether a similarly situated reasonable person receiving the document would believe that it was legal process.

## C. Determining Legal Process

The offense of simulating legal process is committed if a person recklessly causes a document that imitates court process to be delivered to another with the intent to induce that person to make a payment, submit to the authority of the document, or take or refrain from taking an action in response to the document. TEX. PENAL CODE § 32.48. Although the intent of the actor is key, the statute is unclear as to what constitutes legal process.

There can be no precise definition, but in order to provide guidance in determining

whether a document simulates legal process, we shall clarify and expand upon the list of factors articulated by the Amarillo Court of Appeals in *Runningwolf*. We hold that a court should examine all relevant facts in the context of the totality of the circumstances. After reviewing each relevant factor, the court must consider whether a similarly situated reasonable person who received the document would believe that it was legal process.

Take, for example, a document that includes several of the listed factors, such as citation to authority, cause numbers, seals, the presence of a demand, and delivery by service, but the entire document was written in crayon. A reasonable person receiving that document likely would not believe that it was emanating from a court, despite the legal formalities. Thus, a court must consider all relevant factors to determine if the offense has been committed.

### D. Application

Appellant asked this Court to consider the legal sufficiency of the evidence in his conviction for simulation of legal process. Appellant questions the appellate court's reliance on *Gibbs v. State*, as well as the Abatement's plausibility as a legal document. He compares this case to *Saldana v. State*, 109 S.W.3d at 5, in which the El Paso Court of Appeals reversed the jury's guilty verdict.

The conflict in the courts of appeals is clarified through a plain reading of Texas Penal Code section 32.48. Subsection (c) in particular prevents the defendant from relying on his own lack of authority to issue documents as a defense. The provision states that it

is not a defense if the document indicates that it is not legal process, nor if it purports to have been issued by a person or entity without authority to issue the document. TEX. PENAL CODE § 32.48(c). The courts of appeals in *Gibbs* and *Runningwolf* referred to subsection (c) and used a number of factors in assessing the sufficiency of the evidence by viewing the totality of the circumstances, while the *Saldana* court erred in disregarding subsection (c).

Although the *Saldana* court had little Texas jurisprudence to rely on, the court's adherence to the two out of state cases was not entirely appropriate. In *Saldana*, the appellant sent packets that purported to be tax documents to the arresting officer in a traffic stop. *Saldana*, 109 S.W.3d at 5. The documents demanded that the officer report to the Internal Revenue Service money that Saldana had allegedly given to the officer. *Id.* The El Paso Court of Appeals emphasized the fact that the documents were not issued by a court, but rather by the appellant. *Id.* at *10. However, this focus is irrelevant in light of subsection (c) of the statute. It is true that the appellant did not have authority to issue this demand, but the statute explicitly states that this is no defense to prosecution. The North Carolina statute does not contain a provision similar to subsection 32.48(c). Given the differences in the North Carolina and Texas statutes, the El Paso Court of Appeals incorrectly followed the North Carolina case.

Appellant also urges this Court to hold that the Abatement did not "possess a threshold quantum of similarity to, and plausibility as, a real legal document . . . ." We

cannot come to this conclusion.

The Amarillo Court of Appeals distilled from *Gibbs* a number of considerations to determine whether a document simulates legal process. *Runningwolf*, 317 S.W.3d at 837. These factors are appropriate, and the court thoroughly discussed the facts of the case in light of these considerations. We agree that the Amarillo Court of Appeals correctly concluded that the Abatement simulated legal process and Appellant intended to cause Coleman to submit to the authority of the Abatement. However, we must also examine whether a similarly situated reasonable person who received the document would believe that it was legal process.

Appellant asserts that "no one would 'fall for' [the Abatement] as an actual legal document." He also argued before the court of appeals that the recipient's subjective reaction is conclusive in determining whether the document simulates legal process. *Runningwolf*, 317 S.W.3d at 838-39. Coleman threw the document when she received it, but she nevertheless asked the police whether the Abatement was a valid document when it was "served" at her home. Her subjective reaction is not conclusive in determining whether the document simulated legal process, but the fact that she took pause in determining whether the Abatement was a binding document indicates its plausibility as a legal document and must be considered.

Appellant asks us to conclude that the Abatement contained "disjointed legalese," which the *Saldana* court held does not constitute legal process. Although the Abatement

contained phrases that a trained lawyer would recognize as non-legal and unenforceable, we cannot expect a lay person to distinguish such terms. Appellant's use of case law, an official seal, fingerprints, Latin phrases, and bold type on certain text creates the distinct possibility that a reasonable person in Coleman's situation would believe that Appellant and the named "Demandants" had authority to interfere in the placement of the child.

Appellant also points to the Note portion of the Abatement which states, "The usage of federal and state statutes, laws, and codes is only meant to educate you . . . . Other than that, they have no substance in this Non-Statutory Abatement which is issued solely under Ministerial Power and Authority." Appellant includes this phrase in support of his argument that the Abatement is only marginally similar to a legal document. However, he leaves out the middle portion of the sentence, which adds that the use of statutes, laws and code is "only meant to educate you on your own purported laws concerning this matter so that you may comply with the Orders and Decrees of this court."

Based on the text of the Abatement and the circumstances surrounding the event, we conclude that it is reasonable that a similarly situated person in Coleman's position would believe that the Abatement was a legal document. Also, Appellant intended for Coleman to submit to the authority of the Abatement in violation of section 32.48. Therefore, there is sufficient evidence to support the conviction.

## IV. CONCLUSION

We conclude that the reasoning displayed by the Fort Worth and Amarillo Courts of Appeals properly addresses § 32.48. Also, the non-exhaustive list of considerations developed by the Amarillo Court of Appeals in this case provides useful guidance in determining whether a particular document simulates legal process. We further hold that after analyzing the facts of the case in light of the listed factors and others, courts should also consider if a similarly situated reasonable person would believe that he or she had received a legal document.

As applied to Appellant, the lower court thoroughly analyzed the facts of the case and properly determined that the Abatement simulated legal process and Appellant intended to cause Coleman to submit to the authority of the document. Furthermore, it would be reasonable for Coleman to believe that the Abatement was a legal document. Thus, there is sufficient evidence to enable a reasonable juror to find guilt beyond a reasonable doubt. We affirm the judgment of the Amarillo Court of Appeals.

Meyers, J.

Filed: March 7, 2012

Publish