In The

*Court of Appeals*

*Ninth District of Texas at Beaumont*

_____

NO. 09-12-00469-CR
_____

JOHN CHARLES ALFREY, Appellant

V.

THE STATE OF TEXAS, Appellee

_____

On Appeal from the County Court at Law No. 2
Orange County, Texas
Trial Cause No. E102939
_____

MEMORANDUM OPINION

John Charles Alfrey was found guilty of deadly conduct and he was then sentenced, based on the jury's findings, to serve a sentence of one year in jail. In his appeal, Alfrey challenges the sufficiency of the evidence and the trial court's decision to admit evidence over his objection during the punishment phase of his trial that showed he was subject, at the time of his trial, to an order requiring a peace bond. We affirm the trial court's judgment.

Sufficiency of the Evidence

In his first issue, Alfrey argues the evidence is insufficient to support his conviction. In determining whether the evidence admitted during a trial is legally sufficient to support a defendant's conviction, we consider the entire record in the light most favorable to the verdict, and determine whether the evidence, when reviewed in that light, is sufficient to have allowed a rational trier of fact to find the essential elements of the offense beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319 (1979); *see also Brooks v. State*, 323 S.W.3d 893, 894-95 (Tex. Crim. App. 2010). In conducting a legal sufficiency review, the appeals court is not to substitute its judgment on disputed facts or inferences the factfinder may have reasonably inferred from the evidence; instead, we allow the jury to exercise its responsibility to fairly resolve any conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from the facts. *See Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). On appeal, the jury's verdict will be upheld "unless a reasonable juror must have had a reasonable doubt as to at least one of the elements of the offense." *Runningwolf v. State*, 360 S.W.3d 490, 494 (Tex. Crim. App. 2012).

In Alfrey's case, the jury found that on or about May 21, 2011, Alfrey recklessly placed the complaining witness in imminent danger of serious bodily

injury by forcing her car into opposing traffic. *See* Tex. Penal Code Ann. §

22.05(a) (West 2011). The complaining witness testified that before the incident,

she purchased a car that Alfrey, her neighbor at that time, wanted. The evidence

before the jury also indicates that approximately two months before the offense

occurred, the complaining witness moved to Brenham with her brother, D.P., after

she had a "confrontation with John Alfrey[;]" and, she explained that she hoped

that moving would make the problem with Alfrey "go away."[1]

According to the complaining witness, on May 21, 2011, she was driving

from Deweyville to Orange on Highway 87. She was travelling with her infant

daughter and her brother, D.P., when she first saw Alfrey, who was in his car. As

Alfrey followed her, he drove onto the shoulder to her right; then, as he got next to

her, he swerved toward her. The complaining witness described how she swerved

into the oncoming traffic lane and then returned to her lane, and that after she

crossed the railroad tracks, Alfrey pulled beside her again. Once again, Alfrey

---

[1]During the guilt phase of the trial, the record does not show whether the confrontation the complaining witness was referring to several months before the incident occurred was related to the fact that she purchased a car that Alfrey wanted, or whether the confrontation grew from some other conflict that she had with him. However, to prove that a defendant has violated section 22.05 of the Texas Penal Code, the State is not necessarily required to prove the exact reason the defendant engaged in the conduct at issue. *See* Tex. Penal Code Ann. § 22.05(a) (West 2011) (requiring that the State prove the defendant "recklessly" engaged in the conduct at issue).

swerved toward her, forcing her into the oncoming traffic lane. The complaining witness testified that after she returned to her lane, she dialed 911. Alfrey attempted one more time to force her car off the road; according to the complaining witness, that time there were vehicles in the oncoming lane, a car and a tractor-trailer. This time, she pulled onto the shoulder of the oncoming lane and stopped to avoid the oncoming traffic. The complaining witness testified that the oncoming traffic was approximately 100 feet from her when she crossed onto the shoulder of the oncoming lane. According to the complaining witness, the cars that she and Alfrey were driving were travelling between 70 and 75 miles per hour during the course of the events, the cars in the oncoming lane came very close but never actually touched the car she was driving, and the drivers of the approaching vehicles in the oncoming lane did not stop or report the incident.

Also, during the complaining witness's direct examination, she acknowledged that she has a poor memory, but she claimed that she had a clear memory of this incident because she was frightened by it. On cross-examination, Alfrey's attorney brought out several discrepancies between the statement that the complaining witness gave police five days after the incident and her testimony at trial concerning the exact location on the highway where the events of May 21 had occurred.

D.P., the complaining witness's passenger, also testified during Alfrey's trial. In large part, D.P.'s version of the events is consistent with the testimony of the complaining witness. However, D.P. disagreed with the complaining witness's account of exactly where on Highway 87 Alfrey forced them into oncoming traffic. However, D.P.'s testimony that Alfrey forced them into oncoming traffic by swerving his car toward theirs from the right shoulder of the highway is consistent with the testimony presented through the complaining witness. With respect to the location where they swerved into oncoming traffic, D.P. testified that they moved into oncoming traffic right after passing some railroad tracks.

On appeal, Alfrey argues that because there were no physical signs of the alleged incident, such as marks on the vehicles or the roadway, and because discrepancies exist in the accounts[2] of the incident provided to the jury, "no rational trier of fact could have found beyond a reasonable doubt that [Alfrey] engaged in reckless or deadly conduct as alleged." While Alfrey points to several conflicts in the witnesses' accounts of the incident that form the basis of his

---

[2]The complaining witness's accounts of the incident consist of the 911 call the complaining witness made when the incident occurred, questions the complaining witness was asked during trial about the written statement she gave the police five days after the incident occurred, and the trial testimony provided by the complaining witness. D.P.'s accounts of the incident consist of the questions he was asked about a statement he gave police ten days after the incident, and the testimony he gave about the incident at trial.

conviction, it was up to the jury to determine the credibility of the witnesses that testified and to either believe or disbelieve their testimony. *See Fuentes v. State*, 991 S.W.2d 267, 271 (Tex. Crim. App. 1999); *Sharp v. State*, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). When a jury returns a guilty verdict in the face of conflicting testimony, the appellate court presumes in the appeal that the jury resolved the conflicts in the testimony in favor of the prosecution. *See Turro v. State*, 867 S.W.2d 43, 47 (Tex. Crim. App. 1993). Although the record contains conflicting evidence about the exact location where the car driven by the complaining witness was forced into oncoming traffic, both D.P. and the complaining witness testified that Alfrey forced the complaining witness's car into oncoming traffic. Although there may be differences in the testimony provided by various witnesses in a trial, "[e]ach fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

Two witnesses testified that Alfrey forced the complaining witness's car into oncoming traffic, and the jury apparently believed the testimony that Alfrey forced the complaining witness's car into oncoming traffic as she travelled down Highway 87 in May 2011. Although there are discrepancies in various aspects of

6

the accounts regarding the exact location on Highway 87 where the incident they described occurred, and even though there were no physical marks on the vehicles or highway, the evidence is sufficient to allow a rational trier of fact to find, beyond reasonable doubt, that by forcing her car into opposing traffic, Alfrey recklessly engaged in conduct that placed the complaining witness in imminent danger of serious bodily injury. *See Jackson*, 443 U.S. at 319; *see also* Tex. Penal Code Ann. § 22.05(a). We overrule issue one.

Evidence of Extraneous Bad Acts

In issue two, Alfrey complains the trial court erred by admitting evidence in the punishment phase of his trial that a justice of the peace, less than a month after the incident at issue occurred, signed a peace bond that prohibited Alfrey from threatening, harassing, or harming the complaining witness. The record of the trial shows that during the trial's punishment phase, the complaining witness testified that after this incident she moved because she was afraid of Alfrey, and she also obtained a peace bond against him. Over Alfrey's objection that proof for a peace bond was not required beyond a reasonable doubt and that the document was irrelevant and prejudicial, the trial court admitted a copy of the order into evidence. *See* Tex. R. Evid. 401, 403; *see also* Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (West Supp. 2013). The order at issue shows that it was signed on June 10,

2011, less than one month after the date Alfrey committed the conduct for which he was tried. The order at issue states that Alfrey "is accused by complaint under oath . . . with threatening and being about to commit an offense against the [complaining witness,]" and states that the justice court:

> heard proof as to the accusation herein, finds that there is just reason to apprehend that the offense of Assault, was intended to be committed by the Defendant, to Assault and intentionally and knowingly cause bodily injury to [the complaining witness], and the threat of the offense was seriously made[.]

The order at issue was admitted during the punishment phase of Alfrey's trial. In the punishment phase, the trial court has discretion to allow punishment-phase evidence to show the "circumstances of the offense," and to admit:

> any other evidence of an extraneous crime or bad act that is shown beyond a reasonable doubt by evidence to have been committed by the defendant or for which he could be held criminally responsible, regardless of whether he has previously been charged with or finally convicted of the crime or act.

Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1). Alfrey argues that the order at issue was inadmissible in the punishment phase because the fact that the complaining witness applied for and obtained a peace bond following the date of his alleged offense does not prove that the offenses referred to in the order at issue were threatened or that he intended to commit them. According to Alfrey, by suggesting in final argument that the jurors should examine the order at issue, the

8

State buttressed the impression that the peace bond was based on a different occurrence than the conduct he was convicted of at trial. Alfrey argues that the circumstances surrounding the justice court's decision to order a peace bond were not disclosed to the jury, and that consequently, the jury had "no choice except to consider it as proof of 'prior bad acts' for which [Alfrey] should be punished more harshly."

The trial court could have reasonably viewed the order at issue to be relevant in the punishment phase of the trial because the offense referred to in the order was based on Alfrey's conduct of May 21, 2011. *See id.* While the order at issue was also possibly admitted in the punishment phase to show that Alfrey committed other extraneous offenses, if it was admitted as evidence of other offenses, the trial court was required to instruct the jury not to consider the order unless it found, beyond a reasonable doubt, that Alfrey had committed the extraneous offenses referred to in the order. *Id.*

In Alfrey's case, the trial court instructed the jury to that effect by giving the jury the following instruction:

> You are instructed that if there is any testimony before you in the punishment phase of this case regarding the defendant's having committed offenses or bad acts other than the offense alleged against him/her in this case, you cannot consider said testimony for any purpose unless you find and believe beyond a reasonable doubt that the defendant committed such other offenses or bad acts.

Assuming the recitals in the peace bond order imply the commission of an extraneous offense, as opposed to the commission of the charged offense, the trial court did not err in submitting the matter to the jury as the exclusive judge of the facts. *See Mitchell v. State*, 931 S.W.2d 950, 954 (Tex. Crim. App. 1996). We presume the jury followed the trial court's punishment charge instructions. *See Luquis v. State*, 72 S.W.3d 355, 366 (Tex. Crim. App. 2002). Alfrey has not referred us to any evidence in the record to support his argument that the jury did not deliberate and decide his case based on the instructions that are contained in the charge. We overrule issue two, and we affirm the trial court's judgment.

AFFIRMED.

_____
HOLLIS HORTON
Justice

Submitted on April 30, 2014
Opinion Delivered September 3, 2014
Do Not Publish

Before McKeithen, C.J., Kreger and Horton, JJ.

10