

# IN THE COURT OF CRIMINAL APPEALS OF TEXAS

### NO. PD-0992-15

**ANTWAIN MAURICE BURKS, Appellant**

**v.**

**THE STATE OF TEXAS**

### ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW FROM THE FOURTEENTH COURT OF APPEALS FORT BEND COUNTY

RICHARDSON, J., delivered the opinion of the Court in which MEYERS, JOHNSON, HERVEY, and NEWELL, JJ., joined. ALCALA, J., filed a dissenting opinion. YEARY, J., filed a dissenting opinion in which KELLER, P.J., and KEASLER, J., joined.

## O P I N I O N

Appellant, Antwain Maurice Burks, was convicted of the offense of tampering with evidence—the human corpse of Dontay Leonard.[1]  He was sentenced to confinement for sixteen years.  On direct appeal, Appellant asserted that the evidence was legally insufficient

---

[1] Section 37.09(d)(1) of the Texas Penal Code provides that "[a] person commits an offense if the person: (1) knowing that an offense has been committed, alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in any subsequent investigation of or official proceeding related to the offense."

to support his conviction. The Fourteenth Court of Appeals affirmed Appellant's conviction, holding that "the jury's verdict is supported by sufficient evidence."[2] However, the court of appeals did not address the issue of whether the evidence was legally sufficient to support the jury's finding as to one of the elements of the offense of tampering—that Appellant had the intent to impair the availability of the body as evidence in a subsequent investigation or official proceeding. We vacate and remand this case to the court of appeals to address that issue.

## BACKGROUND

### *What Happened To Dontay Leonard?*

The body of Dontay Leonard was found lying face down on a residential street in Fort Bend County between 1:20 a.m. and 1:30 a.m. on May 14, 2012. The cause of death was two gunshot wounds. There were no eyewitnesses to the shooting, and no one came forward claiming to have heard gunshots that night. The police investigation led to Appellant as the last person to have been seen with Dontay Leonard.

The indictment against Appellant alleged that he tampered with the corpse of Dontay Leonard with the intent to impair its availability as evidence:

> [Appellant did] then and there, knowing that an offense had been committed, alter, destroy, or conceal a thing, to wit: the human corpse of Dontay Leonard,

---

[2] *Burks v. State*, No. 14-14-00166-CR, 2015 WL 4463746, at *4 (Tex. App.—Houston [14th Dist.] 2015).

with the intent to impair its availability as evidence in a subsequent investigation of or official proceeding related to the offense.

The State presented several witnesses at trial in an effort to piece together the story of what happened to Dontay Leonard that night. According to the testimony of the first officer on the scene, Dontay's body was lying in the lighted street of a residential neighborhood and no other people were around. Shortly after the officer arrived, the person who had discovered the body and called 911, Everado Arregim, approached the officer. Arregim told him that, on the way home, after picking his wife up from work around 1:15 a.m., they drove past the body of a man "laying close to the middle of the road, just face down." Arregim did not get out of his car. Dontay's girlfriend, Olympia Wheaton, testified that she talked to Dontay at 1:03 a.m.,[3] but was unable to reach him after that.

According to the testimony of Dontay's brother, Appellant bonded Dontay out of jail that night and then the two went to a club named Tasso's. He testified that Appellant told him that Dontay had gotten into an argument with someone at the club, so the two left the club to go "joy riding." While they were in Appellant's car on the way home, someone approached in another vehicle and put a gun to Dontay's head. Appellant told Dontay's brother that he (Appellant) took off running. Appellant said he heard two shots before the

---

[3] Wheaton testified at trial as follows:

Q: All right. And you talked to him at 1:03. Was he alive at that time?

A: He was.

gun jammed.[4] Appellant then went back to his car and drove off. Dontay's brother testified that he thought it seemed improbable that Appellant could run because he was injured and using a cane at that time.

Jasmine Walker, Appellant's sister, testified that it took her a few days after the incident to locate Appellant. She said that Appellant told her "several stories" about what happened. Jasmine recalled asking Appellant, "What's going on?" Appellant said, "Something happened at Tasso's." She said that Appellant "admitted to smoking Wet with Dontay."[5] Appellant told her that "they got into it with somebody" and words were exchanged. He said that "this guy kept taking his car and driving off and coming back with his car." Appellant did not admit to Jasmine that he witnessed the shooting.

Kimberley Iford, Dontay's former girlfriend and mother of his child, testified that she talked to Appellant after Dontay went missing, and Appellant admitted to having witnessed what happened. She said Appellant told her that "they got into it with some guy at the club;" that a "guy and another guy came to the car;" that "one guy pulls a gun out at the passenger side and came into his side, Antwain's side, and then the guy supposed to have had—like they was trying to rob them or something." She said that Appellant told her, "after the guy shot Dontay, that he (Appellant) ran into the bushes." Kimberley asked Appellant if Dontay

---

[4] Dontay's brother wondered how Appellant would know the gun jammed if he had run away from the car.

[5] Wet is a street drug—PCP.

died instantly, and Appellant told her that "he didn't make any sounds."

Kimberley Iford's sister, Kitra Bell, was with Kimberley while she was talking to Appellant on the phone. Kitra took the phone from Kimberley and talked to Appellant. She said, "He told me he did not kill Dontay, but he did push him out the car." She testified that Appellant said to her, "Man, I don't want to talk about this, but Dontay was my friend, I would not have killed him, but I pushed him out of my car." A recording of their conversation was admitted at trial. The recording contains the following exchange between Kitra Bell and Appellant:

Bell:        You didn't hear [Dontay] say nothin'?

Appellant:   No.

Bell:        So hopefully he instantly died then.

Appellant:   That's what I think.

The State also presented testimony about the physical evidence in Appellant's car and at the scene where the body was discovered, and testimony by the medical examiner. One officer testified about finding an unfired bullet on the ground and a spent shell casing on the street where Dontay was found.

The homicide investigator, Detective Richard Martinez, testified that blood was concentrated around Dontay's waist area and the front of his shirt. Detective Martinez stated that, from his seventeen years investigating murders, the way the blood was pooled around Dontay's waist suggested to him that Dontay "was probably seated somewhere when he was

shot, and that he was seated there long enough for the blood to soak in around his waist and his buttocks area, and then probably dumped out of a car." There was a tear to the left buttocks area of the boxer shorts Dontay was wearing, and he also had an abrasion under his right eye. Detective Martinez speculated that "the tear in the boxer shorts could have come from if he was pushed out of a car, and also possibly the abrasion." Detective Martinez took Appellant's statement. He said that, at first, Appellant professed to not know Dontay Leonard and that Dontay had never been in his car. Then, Appellant admitted cutting Dontay's hair when they were in junior high school. Appellant then told Detective Martinez that Dontay could have been in his car because he loans his car out to people. But Detective Martinez suspected Appellant was not being truthful after learning Appellant had bailed Dontay out of the Fort Bend County Jail that same night. Detective Martinez testified that Appellant's vehicle was discovered in a salvage yard (it had been wrecked after the shooting). Dontay's blood was found on the passenger seat. The seat appeared as if it had been scrubbed, but officers were able to lift traces of Dontay's blood from inside the cushion. Martinez testified that all of the evidence was consistent with "a body dump." But on cross-examination, Detective Martinez did admit that Dontay "might have been alive when he was pushed out." Detective Martinez also surmised that the spent casings found at the scene could have fallen out with the body. Detective Martinez also testified that if a person is in

a vehicle, and there is evidence of that person being shot inside the vehicle, discarding the body out of the vehicle impairs its availability as evidence of a crime.

Dr. Nobby Chip Mambo, Deputy Medical Examiner for Galveston County, testified about the wounds on Dontay's body. He said there were two gunshot wounds—one on the left chest near the nipple and one at the back of his left shoulder. Dr. Mambo said the bullet that went into Dontay's back "moved from the left back through the chest, into the abdomen, where it caused some damage to the liver." He testified that the bullet "caused damage to . . . the upper lobe of the left lung and also the left lobe of the liver and the duodenum, which is . . . part of the small intestines, and the pancreas, which is tucked behind the duodenum."

Dr. Mambo acknowledged this wound could be fatal, but was not immediately life-threatening because it just hit the lung and the liver. The other bullet entered on the left side of the chest causing damage to the left lung, the heart, and the liver. According to Dr. Mambo, this gunshot wound caused Dontay's death. Dr. Mambo also explained Dontay was likely shot while sitting because the blood soaked down to his waist and buttocks. Dr. Mambo also testified that the abrasion on Dontay's face was consistent with the skin being scraped over a rough surface, and the abrasions on Dontay's right knee could have occurred from being pushed out of a vehicle. On cross examination, Dr. Mambo gave inconsistent opinions. When asked whether Dontay would be in the position he was found if he was

already deceased while seated in a car, Dr. Mambo replied "no." On redirect, the State clarified through Dr. Mambo that being shot while sitting would cause the blood to soak down to the area where most of the blood was found, and if he were shot while laying down, the blood would pool downwards; however, the tracks of blood on the street were consistent with Dontay's body being dragged.

In his closing argument, Appellant's counsel argued that the elements of tampering with a human corpse were not met:

> But it's clear from the physical evidence that Dontay Leonard died outside of this car. . . . It is also clear that the location of the body would not establish any intent to alter, destroy or conceal the body of the deceased with intent to impair its availability as evidence. . . . After all, the body of the deceased was found in plain view under a street lamp, next to the driveway of a house, in a densely populated residential area, face down in the middle of the street, and it was found within 15 to 20 minutes after Dontay Leonard's death.

The jury did not agree and found Appellant guilty of tampering with a human corpse.

### *On Direct Appeal to the Fourteenth Court of Appeals*

Appellant presented a single issue on direct appeal: "The evidence is legally insufficient to support Mr. Burks' conviction." In his brief filed with the Fourteenth Court of Appeals, Appellant made the following arguments to support his point of error:

- "[T]here is no evidence that Dontay Leonard was dead when he got out of or was helped out of the car or was removed from the car. Or when he got onto the street. None."

- "Since Dontay Leonard's body was found intact when the police finally got to the scene, it cannot be argued that the corpse was destroyed."

- "In short, the evidence is legally insufficient to support the conviction of Antwain Burks for having altered, destroyed or concealed a corpse. . . ."

The State seemed to concede that the body was not "destroyed." It did, however, assert that the evidence supported the jury's finding that the body was "altered." The State also argued that the evidence was sufficient to prove Dontay was dead when he exited Appellant's vehicle.

The court of appeals concluded that there was both lay and expert testimony about the physical evidence from which a rational jury could have determined that Dontay was dead at the time he was ejected from Appellant's vehicle. The court of appeals pointed to the medical examiner's testimony explaining that Dontay died from two gunshot wounds, but no witnesses heard or saw anything near the area where the body was found. These facts, said the court of appeals, support an inference that the gunshots occurred elsewhere. The court of appeals also considered testimony describing the way Dontay's blood pooled, which led police to believe Dontay was seated when he died. Dontay's blood was found in Appellant's car, which confirms testimony that Dontay was in Appellant's car when he died from gunshot wounds.

The photos submitted by the State show Dontay's body and two even trails of blood. Other than the trails of blood and the blood soaked into Dontay's clothing, no other blood surrounded the body where it was found. The medical examiner explained that the even trails

of blood resulted from blood dripping off a body that was being dragged, not from blood flowing out of a body. He also stated that blood flowing from a body clots and pools in a way that was not present in the photos of the body at the scene. From this testimony, said the court of appeals, the jury reasonably could have concluded that Dontay's blood stopped flowing from his body by the time his body was dumped out of the car.

In addition, noted the court of appeals, Kimberley Iford testified that she spoke with Appellant who told her Dontay made no sounds after he was shot, which suggests he died instantly. The court of appeals held that the evidence was sufficient to support the jury's conclusion that Appellant tampered with a human corpse, as opposed to a mortally wounded person. In a footnote, the court of appeals addressed the following additional points:

> Appellant does not assert the evidence is insufficient to show he knew an investigation or official proceeding was pending or in progress. Even if Appellant had asserted these claims, we would conclude the evidence is sufficient to support the jury's verdict. To the extent Appellant argues the evidence is insufficient to prove he altered, concealed, or destroyed a corpse, the record contains sufficient evidence to support the jury's verdict. For example, the jury heard evidence that Appellant moved the complainant's body, an act that altered the body's location. The jury also heard evidence that Appellant's actions altered the physical state of the complainant's body.[6]

The court of appeals made no mention of whether the evidence supported the element of the offense requiring that Appellant had the intent to impair the availability of the body as evidence in a subsequent investigation of or official proceeding related to the offense.

---

[6] *Burks*, 2015 WL 4463746, at *4, n.1 (internal citations omitted).

***Appellant's Petition For Discretionary Review***

Appellant filed a *pro se* petition for discretionary review. In his petition, he urged that the court of appeals erred by holding that the evidence was sufficient to show that Dontay was a corpse when he was removed from the vehicle, or that he altered, destroyed, or concealed a corpse. Appellant also claimed in his petition that he did not tamper with a corpse with the specific intent to impair its availability as evidence. We granted Appellant's petition on the following issue: "Petitioner avers that the Honorable Court of Appeals for the Fourteenth District erred in holding that the Trial Court submitted sufficient evidence of Tampering with Evidence when in fact the evidence did not support the finding that Petitioner "Tampered with Evidence" at all; more specifically, a "CORPSE." By order dated November 25, 2015, we remanded the case to the trial court to handle the appointment of counsel to represent Appellant before this Court.[7] In his brief, Appellant summarized the issue before this Court:

> [W]hether the evidence in this case was legally sufficient to prove that Dontay Leonard was dead when [Appellant] removed Dontay from his car. And, if so, whether the act of placing the corpse on the street, in plain view of the world, under a street light, is legally sufficient to prove that [Appellant] altered,

---

[7] On December 30, 2015, this Court received notice that L.T. "Butch" Bradt had been appointed to represent Appellant before this Court and assist with his brief in support of his petition for discretionary review. Mr. Bradt is the same attorney who had represented Appellant on direct appeal. Mr. Bradt timely filed Appellant's brief on January 13, 2016. However, on January 21, 2016, this Court received a motion for an extension of time to file Appellant's brief from a different attorney, Patrick McCann. By letter dated January 25, 2016, this Court requested that the trial court clarify who represents Appellant. That same day, we received an Order Appointing Counsel, which reflects that Patrick McCann has been appointed to represent Appellant.

destroyed or concealed a thing, to wit: the human corpse of Dontay Leonard, with the intent to impair its availability as evidence in a subsequent investigation of or official proceeding related to the offense.

## ANALYSIS

The standard for reviewing the sufficiency of the evidence is whether "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."[8] We must view the evidence "in the light most favorable to the verdict."[9] This Court's role on appeal "is restricted to guarding against the rare occurrence when a factfinder does not act rationally," and we must "defer to the responsibility of the trier of fact to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts."[10] The trier of fact is the sole judge of the weight and credibility of the evidence.[11] Thus, when performing an evidentiary sufficiency review, "[t]his Court may not re-evaluate the weight and credibility of the record evidence and thereby substitute

[8] *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original)). *See also Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) ("[T]he *Jackson v. Virginia* standard is the only standard that a reviewing court should apply in determining whether the evidence is sufficient to support each element of a criminal offense that the State is required to prove beyond a reasonable doubt.").

[9] *Merritt v. State*, 368 S.W.3d 516, 525 (Tex. Crim. App. 2012). *See also Blea v. State*, 483 S.W.3d 29, 33 (Tex. Crim. App. 2016) (citing *Dobbs v. State*, 434 S.W.3d 166, 170 (Tex. Crim. App. 2014)).

[10] *Isassi v. State*, 330 S.W.3d 633, 638 (Tex. Crim. App. 2010) (internal citations omitted). *See also Blea*, 483 S.W.3d at 33 (noting we must presume the jury resolved conflicting inferences in favor of the verdict).

[11] *See* TEX. CODE CRIM. PROC. art. 38.04; *Brown v. State*, 270 S.W.3d 564, 568 (Tex. Crim. App. 2008).

our judgment for that of the factfinder."[12]  The key question is whether "the evidence presented actually supports a conclusion that the defendant committed the crime that was charged."[13]

### *Texas Penal Code Section 37.09(d)(1)—Tampering With Evidence*

Section 37.09(d)(1) provides that "A person commits an offense if the person . . . knowing that an offense has been committed, alters, destroys, or conceals any record, document, or thing with intent to impair its verity, legibility, or availability as evidence in any subsequent investigation of or official proceeding related to the offense."[14] An offense under this section "is a felony of the third degree, unless the thing altered, destroyed, or concealed is a human corpse, in which case the offense is an offense of the second degree."[15]

In order to determine whether the evidence was legally sufficient to support Appellant's conviction of the crime of tampering with a human corpse, as indicted by the State, we must address each element of that offense. As noted above, the indictment against Appellant alleged that he, (1) knowing that an offense had been committed, (2) altered, destroyed, or concealed (3) the human corpse of Dontay Leonard, (4) with the intent to

---

[12] *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (quoting *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)).

[13] *Id.*

[14] TEX. PENAL CODE § 37.09(d)(1).

[15] TEX. PENAL CODE § 37.09(c).

impair its availability as evidence in a subsequent investigation of or official proceeding related to the offense.

Appellant has not raised the argument that the evidence is insufficient to support the jury's finding that Appellant knew that an offense had been committed.[16] Rather, Appellant disputes the sufficiency of the remaining three elements—that Dontay was not dead when Appellant pushed him out of the car; that Appellant did not alter, destroy, or conceal any evidence; and that Appellant had no intent to impair the body's availability as evidence.

### *Was There a Human Corpse?*

Appellant argues that there was no evidence Dontay was dead when he was removed from the car. He asserts that no one testified to a time of death. Police speculated that the time of death occurred around 1:30 a.m., but that was based on the timing of the 911 call. There was no expert medical testimony pinpointing the time of death.

The State counters that evidence of an exact time of death was not necessary to satisfy its burden of proof. The State claims there was sufficient circumstantial evidence that Dontay was a dead body when Appellant removed him from his car. We agree.

The question is whether, after viewing the evidence in the light most favorable to the

---

[16] In a footnote, the court of appeals noted that Appellant did not assert that the evidence is insufficient to show he knew an investigation or official proceeding was pending or in progress, but still concluded that the evidence was sufficient. We note that Appellant was charged with the portion of the tampering statute that requires that the appellant know that an offense has been committed, not that an investigation or official proceeding was pending. Nevertheless, we find the evidence sufficient to support that allegation and finding by the jury.

prosecution, any rational trier of fact could have found, beyond a reasonable doubt, that Dontay was dead when Appellant pushed him out of the car.[17] A criminal conviction may rest solely on circumstantial evidence.[18] We agree with the court of appeals that the following evidence, when viewed in the light most favorable to the jury's verdict, supports the conclusion that Dontay was dead when he was removed from Appellant's car:

- Dontay's blood was found in the passenger seat of Appellant's car, tending to prove that Dontay was shot in Appellant's car.

- Dontay had been in a seated position long enough after he was shot for his blood to have soaked through the seat cover and into the seat cushion below.

- From the photos admitted showing the body at the scene, there appears to be a large amount of blood around the waist and buttocks area, consistent with the police officer's testimony about the "pooling" in that area. Thus, the evidence supports the State's position that Dontay was in a seated position long enough after he was shot for the blood to pool in his waist and buttocks area.

- Dontay did not answer his phone after 1:03 a.m.

- Appellant claimed in a recorded phone conversation that he thought Dontay died instantly after being shot.

- In response to the question whether "the gunshot [caused Dontay's] immediate death," the medical examiner clarified that "the one from the back would not." His answer could reasonably be interpreted as

---

[17] *Webb v. State*, 801 S.W.2d 529, 530 (Tex. Crim. App. 1990) (citing *Jackson*, 443 U.S. at 319).

[18] *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007).

implying that the gunshot to the chest did cause immediate death. Moreover, there was no way to detect which gunshot wound came first.

- There was no pooling of blood where Dontay's body was found, but there were tracks of blood trailing from the body indicating it had been dragged.

While this evidence may appear to be marginal, we agree with the court of appeals's holding that a rational jury could have found beyond a reasonable doubt that Dontay died while inside Appellant's car.

### Was The Body Altered?

The State does not dispute that the corpse of Dontay Leonard was not destroyed. The State attempts to fashion an argument that the corpse was concealed, but we find no evidence in the record that Dontay's body was concealed or that there was any attempt to conceal Dontay's body. Our focus is on Appellant's argument that the evidence was insufficient to support a finding that the body of Dontay Leonard was "altered."

The State suggests Appellant is conceding that he altered Dontay's body because he asks this Court to overrule two intermediate appellate court cases holding that moving a dead body alters it. In *Ramos v. State*,[19] the record contained evidence illustrating that the appellant dragged the body of the victim around his apartment before law enforcement officers arrived. The Seventh Court of Appeals found that "her body was no longer in the

---

[19] 351 S.W.3d 913, 914 (Tex. App.—Amarillo 2011, no pet).

identical position (geographically and physically) in which it would have been had he not moved it. . . . [T]here appeared marks on the corpse apparently caused by the decedent's skin coming in contact with the floor as Appellant dragged it."[20] Concluding that "alter" means "to change or make different," the court held that the appellant's manipulation of the dead body "caused its appearance and position to be different from the appearance and position it would have been in had he not dragged it," and thus there was some evidence upon which a rational jury could find beyond a reasonable doubt that the appellant altered the corpse.[21] In *Carnley v. State*,[22] the Second Court of Appeals held that there was sufficient evidence the appellant intentionally altered the evidence—a car—because she moved it. We agree with the reasoning in *Ramos* and *Carnley.*

We conclude that there was evidence presented to the jury sufficient to support the finding that Dontay Leonard's body was altered. One of the police officers testified that Appellant altered the corpse by changing its location. The evidence showed that Dontay was shot while sitting in Appellant's vehicle, he bled and died in Appellant's vehicle after being shot, and he was then pushed or dragged out of Appellant's car onto the street, sustaining skin abrasions and ripped underwear which could have occurred from falling or being pulled

---

[20] *Id.*

[21] *Id.* at 915.

[22] 366 S.W.3d 830, 835 (Tex. App.—Fort Worth 2012, pet. ref'd).

out of Appellant's car. Viewing this evidence in the light most favorable to the verdict, we agree with the court of appeals[23] that the evidence was sufficient to support the jury's finding that the dead body of Dontay Leonard—its location and physical state—had been altered.

### Was There Intent to Impair The Body's Availability as Evidence?

Appellant's trial counsel argued before the jury in closing that it was clear that the location of the body would not establish any intent to impair its availability as evidence.[24] The body was in plain view in the middle of a well-lit, densely-populated residential street, next to the driveway of a house. The body was not hidden, was clearly visible, and was certain to be discovered by the next passerby. Appellant argues before this Court that the evidence was insufficient to support the jury's finding that Appellant intended to impair the corpse's availability as evidence in a subsequent investigation of or official proceeding related to the offense.[25]

The tampering with evidence statute requires intent as to a particular result, namely,

---

[23] *Burks,* 2015 WL 4463746 at *4, n. 1.

[24] We note that no preservation of error is required for evidence sufficiency challenges. *Moore v. State*, 371 S.W.3d 221, 225 (Tex. Crim. App. 2012).

[25] The State could have alleged that, under section 37.09(d)(1), Appellant altered the body of Dontay Leonard "with intent to impair its verity . . . as evidence." However, the State's indictment alleged only that Appellant had the intent to impair the body's "availability" as evidence. It did not allege that Appellant intended to impair its "verity." Therefore, analysis of the evidence must be limited to that which is in support of the offense as alleged in the indictment.

impairing a thing's availability as evidence.[26]  In *Stewart v. State*, this Court held, "It is not enough that Appellant *knew* that his action would impair the availability of the marihuana as evidence.  He must have *intended* to impair its availability.  That is, impairing the marihuana's availability as evidence must have been Appellant's conscious objective or desire."[27]  "The required intent is . . . that the evidence be made unavailable . . . ."[28]

The State claims Appellant is arguing "for the first time" that the evidence is insufficient to support a finding that Appellant acted with the intent to impair the availability of Dontay's body as evidence in a subsequent proceeding.  The State asserts that Appellant did not raise this argument in the lower court, he thus waived it, and that is why the lower court did not address this issue in its opinion.  And, since the appellate court did not address this issue, this Court need not address it.

It is true that Appellant did not argue to the court of appeals that the evidence was insufficient to support the jury's finding that he intended to impair the corpse's availability as evidence in a subsequent investigation of or official proceeding related to the offense.  And, in deciding whether the evidence was sufficient to support Appellant's conviction, the court of appeals did not address whether there was sufficient evidence to support that element

---

[26] *Stewart v. State*, 240 S.W.3d 872, 874 (Tex. Crim. App. 2007).

[27] *Id.* at 875 (emphasis in original).

[28] *Id.* at 875 (Womack, J., dissenting).

of the offense. It is also true that this Court need not review an argument that was not addressed at the appellate level.[29] Our review is limited to decisions by the court of appeals.[30] A party "may not expect this Court to consider a ground for review that does not implicate a determination by the court of appeals of a point of error presented to that court in orderly and timely fashion."[31]

However, while the failure to make a particular argument is a factor that may be considered when this Court decides whether to exercise its discretion to grant review, this Court is not barred from granting review to address an issue if the Court, in its discretion, decides that review is warranted.[32] "The Due Process Clause of the Fourteenth Amendment

---

[29] *Arline v. State*, 721 S.W.2d 348, 353 n.9 (Tex. Crim. App. 1986) ("[O]ur review is limited to those points of error decided by the courts of appeals, included in petitions for discretionary review and granted as grounds for review.").

[30] *See Farrell v. State*, 864 S.W.2d 501, 503 (Tex. Crim. App. 1993) (holding that, "to ensure that [this Court] review[s] only decisions of the courts of appeals, we insist that the parties, in an orderly and timely fashion, provide the courts of appeals with the first opportunity to resolve the various issues associated with the appeal"). *See also Lambrecht v. State*, 681 S.W.2d 614, 616 (Tex. Crim. App. 1984) (noting the rules of appellate procedure "do not authorize review of claims which have not been presented in an orderly fashion and determined by the appropriate court of appeals").

[31] *Tallant v. State*, 742 S.W.2d 292, 294 (Tex. Crim. App. 1987).

[32] *See, e.g.*, *Volosen v. State*, 227 S.W.3d 77, 80 (Tex. Crim. App. 2007). We recognize that, in *Volosen*, the issue was whether it was appropriate for us to review an appellee's claim raised for the first time in a petition for discretionary review. We noted that, because an appellee is not required to file a brief on direct appeal, this Court would certainly have the discretion to review arguments raised by the appellee for the first time on discretionary review. In this case, it is true that Appellant's briefing of his arguments on direct appeal fell short of what is required under Texas Rule of Appellate Procedure 38.1(I). However, under the circumstances of this case, as discussed herein, we choose to exercise our discretion to review the sufficiency claim raised in his petition, which did include the argument that the evidence was insufficient to support the jury's finding that he had the intent to impair the availability of the body as evidence.

of the United States Constitution requires that a criminal conviction be supported by evidence 'necessary to convince a trier of fact beyond a reasonable doubt of the existence of every element of the offense.'"[33]

In his brief filed with the Fourteenth Court of Appeals Appellant raised the point of error that the evidence is not legally sufficient to support his conviction. He set out the elements of the offense as included in the indictment, which specifically alleged that Appellant tampered with the corpse of Dontay Leonard "with the intent to impair its availability as evidence." Appellant asserted that "[t]he body was not concealed or hidden in any way" and that "Dontay Leonard was found in the middle of a street in an area lighted by street lights." Appellant cited to the record to support these assertions. Appellant then recited the standard that "[e]vidence is legally sufficient only if the state has affirmatively proven each of the essential elements of the offense."

Appellant's point of error raised on direct appeal—that the evidence is insufficient to support the conviction—necessarily encompasses every element of the offense Appellant is convicted of. Thus, Appellant's initial presentation of the issue—that the evidence was insufficient to support the conviction—satisfied Texas Rule of Appellate Procedure 38.1(f)[34]

---

[33] *Runningwolf v. State*, 360 S.W.3d 490, 493-94 (Tex. Crim. App. 2012) (quoting *Jackson v. Virginia*, 443 U.S. 307 (1979)).

[34] TEX. R. APP. P. 38.1(f) ("The brief must state concisely all issues or points presented for review. The statement of an issue or point will be treated as covering every subsidiary question that is fairly included.").

by "fairly includ[ing]" the "subsidiary question" of whether the evidence was sufficient to support the intent-to-impair element of the offense of tampering.

We believe that "a first-level appellate court has the obligation to conduct a thorough review of an appellant's claims, including any subsidiary issues."[35] This Court is not asking the court of appeals to "reach out and reverse the trial court on an issue that was not raised."[36] Appellant raised the issue of sufficiency of the evidence to support his conviction. We are mindful that, in his briefing before the Fourteenth Court of Appeals, Appellant chose to focus more heavily on the argument that there was insufficient evidence to support the "corpse" element of the offense and not the "intent-to-impair-the-availability" element. However, a sufficiency claim encompasses all elements of the offense, and the appellate court should have addressed the sufficiency of all of the elements of the tampering offense, including the intent-to-impair-the-availability argument that is now before us. At the very least, the appellate court could have required additional briefing "for a satisfactory submission of the case."[37]

---

[35] *Volosen*, 227 S.W.3d at 80.

[36] See *State v. Bailey*, 201 S.W.3d 739, 744 (Tex. Crim. App. 2006).

[37] *See* TEX. R. APP. P. 38.7 ("Amendment or Supplementation. A brief may be amended or supplemented whenever justice requires, on whatever reasonable terms the court may prescribe."); Tex. R. App. P. 38.9(b) ("Briefing Rules to Be Construed Liberally. . . . (b) *Substantive Defects*. If the court determines, either before or after submission, that the case has not been properly presented in the briefs, or that the law and authorities have not been properly cited in the briefs, the court may postpone submission, require additional briefing, and make any other order necessary for a satisfactory submission of the case.")

## **CONCLUSION**

As to the elements of the offense of tampering with physical evidence (a corpse), we agree that (1) the evidence was legally sufficient to support the State's allegation that Dontay Leonard was already dead when Appellant pushed him out of his car, and that (2) the evidence was legally sufficient to support the State's allegation that Appellant altered the body of Dontay Leonard. However, we vacate and remand this case to the court of appeals to address whether the evidence was sufficient to support the jury's finding that Appellant had the intent to impair the availability of the body as evidence.

DELIVERED: November 2, 2016

DO NOT PUBLISH